**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a corporation, Appellant,**

**v.**

**SEARS, ROEBUCK AND COMPANY, a corporation, Appellee.**

No. 77–3515.

United States Court of Appeals, Ninth Circuit.

Sept. 4, 1979.

Terry Kinigstein, Jonas, Fern & Simpson, Los Angeles, Cal., for appellant; Ralph Jonas and Albert D. Sanchez, Los Angeles, Cal., on brief.

Richard A. Neumeyer, Los Angeles, Cal., for appellee; Arthur Paul Berg, Grace, Neumeyer & Otto, Los Angeles, Cal., on brief.

Before BROWNING, BARNES and ELY, Circuit Judges.

BARNES, Senior Circuit Judge.

St. Paul Fire and Marine Insurance Company ("St. Paul") brought this diversity action against Sears, Roebuck and Co. ("Sears") and others [1] for declaratory relief as to its obligation to Sears, CCC Plastics, Inc. ("CCC Plastics") and other parties under a policy of liability insurance issued to the latter two named corporations. Summary judgment was granted in St. Paul's favor and Sears now appeals to this Court.

I. FACTS

St. Paul entered into a "Comprehensive General and Automobile Liability Coverage" insurance agreement ("Insuring Agreement") with CCC Plastics which became effective September 1, 1972. On November 20, 1973, St. Paul issued a "Certificate of Insurance" which stated that Sears was to be named as an "Additional Insured".

On November 28, 1972, Sears entered into a "Contract for Installation Services" ("Services Contract") with CCC Plastics whereby the latter agreed to install urethane foam roofing for Sears' customers, when needed, as Sears did not engage in the installation of certain materials which it sold. On May 19, 1974, Sears sold and agreed to have installed urethane foam roofing on buildings managed by the Park South Community Association ("Association"), a non-profit property owners group. The installation operations were assigned to CCC Plastics which allegedly failed to perform in a proper workmanlike manner.

On April 2, 1976, the Association and its president filed a civil suit, No. Indio 21225, in the California Superior Court for the County of Riverside ("Indio suit") against Sears, CCC Plastics and certain of the other originally named defendants in the present

---

1. Also named as defendants in the complaint were CCC Plastics, Inc., United Foam Corporation, Dunn-Edwards Corporation, Park South Community Association, Joseph Incorvalia, and Paul Daugherty. These latter defendants were subsequently dismissed from the lawsuit by St. Paul in exchange for their agreement not to make a claim pursuant to the insurance policy involved herein.

782

federal action.[2] Sears tendered the defense of the Indio suit to St. Paul on the grounds that it was entitled to both indemnity and defense against the alleged damages under the provisions of the Insuring Agreement. St. Paul undertook the defense but reserved its right to deny coverage under the policy.

St. Paul filed the present action on September 21, 1976 seeking three specific forms of relief: 1) a declaration that Sears and the remaining parties in the Indio suit have no rights or claims against it arising from the Insuring Agreement, 2) a reimbursement· from Sears as to the attorney's fees which it had expended thus far in defending ·Sears in the Indio suit, and 3) its costs in the present federal action.

After some discovery, St. Paul filed a motion for partial summary judgment. In its memorandum of points and authorities in opposition to the motion, Sears proffered the affidavit of Remy Burkel as an expert witness. Mr. Burkel stated that he had examined the roofs involved herein and found· the urethane material to have been defectively applied thereto. He concluded that the newly installed membrane had become an "integral part" of the buildings. He also opined that in order to repair the buildings, the urethane foam on the roofs would have to be removed, the underlying surface of the existing roof cleaned, patched and specially prepared, and a new urethane membrane put on. St. Paul did not submit any declaration or affidavit to refute Burkel's statements.

On April 29, 1977, after previously hearing oral argument on the motion, the district court entered a "Pretrial Summary Judgment" which adopted St. Paul's proposed Findings of Fact and Conclusions of Law. After objections were raised by

Sears, the findings of fact were modified in part. Subsequently, all of the named defendants in the declaratory action, except Sears, were dismissed by St. Paul in exchange for their agreement not to make any claims based on the Insuring Agreement. St. Paul thereafter filed a claim for, and was awarded, attorney's fees for the defense of Sears in the Indio suit and for its costs arising from the present federal action. That latter disposition ostensibly disposed of the remaining issues in the declaratory action.

## II. DISCUSSION

This case presents but one issue, i. e. whether the plaintiffs in the Indio suit seek recovery for any property damage which the Insuring Agreement provides coverage for Sears. If so, then the grant of summary judgment in St. Paul's favor was improvidently granted. That issue can be resolved after two initial steps. First, the provisions of the Insuring Agreement must be reviewed and interpreted according to relevant law to ascertain what forms of property damage are covered. Second, the complaint filed in the Indio suit must be examined to determine the nature of the property damages which are sought against Sears.[3]

### A. *Property Damage Covered by the Insuring Agreement*

■ Section 2(B) of the Insuring Agreement delineates the scope of protection for "Coverage D; Property Damage Liability Other Than Automobile." As stated in relevant part:

The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

\* \* \* \* \* \*

2. The complaint in the Indio suit contained the following causes of action: 1) breach of written contract, 2) breach of· express warranty, 3) breach of implied warranty of merchantability, 4) breach of implied warranty of fitness for purpose, 5) negligence, 6) strict liability in tort, and 7) fraudulent misrepresentation and fraud.

3. Insofar as the complaint in the Indio suit seeks punitive damages for alleged willful acts, those damages do not fall within the definition of property damage under the terms of the Insuring Agreement. Moreover, Section 533 of the ,California Insurance Code would prohibit such coverage even if contained within the contract. *Maxon v. Security Insurance Co.,* 214 Cal.App.2d 603, 615, 29 Cal.Rptr. 586 (1963).

*Coverage D.* Property Damage; to which this Insuring Agreement applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless, false or fraudulent. . . .

Property damage is defined generally in the Insuring Agreement to mean "injury or destruction of tangible property". Certain forms of property damage are excluded from the scope of the agreement by Section 3. As regards this case, there are three pertinent exclusionary provisions; and they provide as follows:

3. EXCLUSIONS
THIS INSURING AGREEMENT
DOES NOT APPLY:

* * * * * *

As respects Coverages B and D.

F. To liability assumed by the Insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the Named Insured's products or a warranty that work performed by or on the behalf of the Named Insured will be done in a workman-like manner;

* * * * * *

P. To property damage to the Named Insured's products arising out of such products or any part of such products;

* * * * * *

Q. With respect to the completed operations hazard (if the insurance otherwise applies to property damage included within such hazard), to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.[4]

From its language, Exclusion F does not preclude protection for liability assumed by the Insured pursuant to a contract under which the Insured warrants that work performed on its behalf will be done in a workmanlike manner. However, the extent of that protection is reduced by the subsequent provisions of Section 3. For example, Exclusion P eliminates coverage for the Named Insured's products. Exclusion Q precludes recovery for property damage to work performed by or on behalf of the Named Insured "with respect to the completed operations hazard."[5]

4. Exclusion Q in the main body of the Insuring Agreement was deleted and another Exclusion Q was substituted pursuant to Endorsement 6 which was attached to the Insuring Agreement.

5. "Completed Operations Hazard" is inarticulately defined in the policy as follows:

"Completed Operations Hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) When all operations to be performed by or on behalf of the Named Insured under the contract have been completed;

(2) When all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed; or

(3) When the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operation for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The completed operations hazard does not include bodily injury or property damage arising out of:

(a) Operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof.

An initial question arises as to whether the installation of allegedly defective materials in an unworkmanlike manner to a roof causes an injury to tangible property within the meaning of property damage in the Insuring Agreement. St. Paul argues that it does not and cites to *St. Paul Fire and Marine Ins. Co. v. Coss,* 80 Cal.App.3d 888, 892, 145 Cal.Rptr. 836, 839 (1978). The *Coss* case supports St. Paul's position only to a limited extent. It holds that: "the mere inclusion of a defective component, *where no physical harm to other parts results therefrom* [emphasis added]" does not constitute "property damage". Citing *Hamilton Die Cast, Inc. v. United States F. & G. Co.,*508 F.2d 417, 419 (7th Cir. 1975); *accord, Fresno Economy Import Used Cars, Inc. v. United States F. & G. Co.,* 76 Cal. App.3d 272, 284, 142 Cal.Rptr. 681 (1977). Thus, where there is damage to property other than that which consists of the Insured's product, there is "property damage" within the definition of the term in the Insuring Agreement.

The same conclusion is reached when the relevant exclusions in the Insuring Agreement are considered. Exclusion P clearly precludes any recovery for damages to materials originating from the Named Insured. Nevertheless, an issue arises as to coverage when the Named Insured's product becomes so integrated into other tangible property such that a repair or replacement of that product would entail some injury to or replacement of a part of the existing property which did not originate from the Named Insured. In this case, the Burkel affidavit states that the removal of the urethane material (which is a Sears product) would damage the existing roofing felt, tar and gravel (which are not Sears products).

The costs which arise from the repair operations would not be excluded by the language of Exclusion P. In *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.,* 51 Cal.2d 558, 334 P.2d 881 (1959), and on appeal after remand, 63 Cal.2d 602, 47

Cal.Rptr. 564, 407 P.2d 868 (1965), involving a provision similar to Exclusion P, the manufacturer of defective doors which were installed in a housing project by an unrelated third party was permitted to recover from its liability insurer the costs of removing the original defective doors and installing new replacement doors although not the costs of the original or replacement doors themselves. The California Supreme Court distinguished its earlier decision in *Volf v. Ocean Accident & Guar. Corp.,* 50 Cal.2d 373, 325 P.2d 987 (1958), which held that a contractor who had installed defective stucco was not entitled to recover any costs of putting on a new coat of stucco over the old one, on the ground that in *Volf* no removal of defective stucco was involved. The Court in *Geddes* cited with approval *Hauenstein v. St. Paul Mercury Indemnity Co.,* 242 Minn. 354, 65 N.W.2d 122 (1954), which held that there had been property damage to a house by the lowering of its market value due to the application of defective plaster which had to be removed before new plaster could be installed. *Accord, Goodyear Rub. & Sup. Co., Inc. v. Great American Ins. Co.,* 471 F.2d 1343, 1345 (9th Cir. 1973); *Owens Pacific Marine, Inc. v. Insurance Co. of North America,* 12 Cal. App.3d 661, 90 Cal.Rptr. 826 (1970). The closest case on this point is *Bundy Tubing Co. v. Royal Indem. Co.,* 298 F.2d 151 (6th Cir. 1962) (applying Michigan law), where the cost of removing a non-defective concrete floor in order to repair and replace defective tubing supplied by the insured was held to be recoverable under an insurance contract with exclusions similar to the ones in this case. The cases to the contrary cited by St. Paul herein, *i. e. Biebel Bros., Inc. v. United States F. & G. Co.,* 522 F.2d 1207 (8th Cir. 1975); *Aetna Ins. Co. v. Pete Wilson Roofing & Heating Co., Inc.,* 289 Ala. 719, 272 So.2d 232 (1973); *Hartford Accident & Indemnity Co. v. Olson Bros., Inc.,* 187 Neb. 179, 188 N.W.2d 699 (1971),

(b) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(c) Operations for which the classification stated in the Policy or in the Company's manual specifies "including completed operations."

are distinguishable as they all were limited to the removal and replacement of roofing materials which consisted solely of products supplied by the insured.[6]

## B. *Property Damage Alleged in the Indio Suit*

■ The property damages sought against Sears in the Indio suit stem mainly from the failure of CCC Plastics to install the urethane foam in a workmanlike manner. The following nine instances of defects in workmanship are specified in the complaint:

(a) the urethane roofing was installed in an unworkmanlike manner, such that the roofs leak;

(b) the roofing is not uniformly white in color, many portions of the roof being brownish in color;

(c) the roofing contains air and/or water bubbles;

(d) the urethane foam is not bonded tightly to the formerly existing tar and gravel roofs or to the existing horizontal and lateral joints surrounding the areas to be roofed;

(e) the outside air-conditioning labels were not uniformly and properly masked;

(f) the debris generated by the installation was not removed;

(g) the urethane foam was not applied according to the plans and specifications agreed upon, and instead of being properly applied to the existing roofs, was applied to the outdoor furniture, patio floors, sidewalks, hedges and foliation, air-conditioning ducts and other places it does not belong;

(h) dark gray roof slag and other debris was dumped throughout the premises;

(i) the installation did not comply with applicable laws, especially building code rules and regulations of the City of Palm Springs.

The district court initially found that "Damages sought in the underlying action [the Indio suit] are solely for the cost of repairing or replacing the roof."[7] However, after Sears had objected to that characterization of the Indio suit, the finding of fact was modified to read: "Damages sought in the underlying action include the cost of repairing and replacing the roof." The modification of that factual finding indicates a concession by the judge that the Indio suit alleged damages other than the cost of repairing and replacing the roof. While the nature of those other property damages was not delineated, that factual finding by itself should have precluded the entry of summary judgment herein.

It is clear that the Indio suit alleges property damage which is covered by the Insuring Agreement. First, according to paragraph 13(a) of the complaint, improper installation by the defendants caused the roofs to leak. St. Paul would be eventually liable for any water damage to the buildings and their contents.[8] In addition, insofar as the roof was punctured or otherwise damaged during the course of the application of the urethane roofing material, such

---

**6.** *Southwest Forest Industries, Inc. v. Pole Buildings, Inc.,* 478 F.2d 185 (9th Cir. 1973), is distinguishable as the insured therein was contracted to construct the entire building and thus the damage to the building due to the defective roof fell within the policy exclusions. This same distinction was earlier recognized by this Court in *Goodyear Rub. & Sup. Co., supra,* 471 F.2d at 1345.

**7.** Under the *Geddes & Smith* precedent, that initial finding of fact would not have been sufficient to support the conclusion that St. Paul was entitled to summary judgment. In *Geddes & Smith, supra,* 63 Cal.2d 602, 47 Cal.Rptr. 564, 407 P.2d 868, the California Supreme Court found that while the costs of the replacement

items are excluded under a policy similar to the one herein, the costs of removing the old items and installing the new are included within the coverage. Thus, "the cost of repairing or replacing the roof" could entail some expenses within the Insuring Agreement especially if the repair or replacement was for parts of the roof other than the urethane material.

**8.** In footnote 5 of St. Paul's brief to this Court, it is stated that:

St. Paul conceded that the policy covers claims for consequential damages such as water damage to the interior of the building due to rain leaks and has adjusted such claims as presented.

damage to the existing roof structure would fall within the scope of the agreement.

Paragraphs 13(f) and (h) allege that debris was scattered throughout the premises and was not removed. Likewise, paragraph 13(g) charges that the urethane material was improperly applied to "outdoor furniture, patio floors, sidewalks, hedges and foliation, air-conditioning ducts and other places it does not belong". Thus, the Indio suit alleges that the premises owned by the members of the Association were damaged by the indiscriminate dumping of debris and misapplication of the urethane material. Costs of repair of that property and removal of the urethane foam from places where it does not belong are recoverable by Sears.

Finally, according to the uncontested statements of Mr. Burkel, the removal of the defectively installed roofing material will cause some damage to the existing roof structure. Recovery for that damage is not precluded by the exclusion for damages to Sears' products as the former arises from property which did not originate from Sears.

### C. *Duty to Defend*

 Pursuant to Section B of the Insuring Agreement, St. Paul has the duty to defend any suit against Sears which seeks recovery on account of property damage. Under California law, any question of doubt as to such duty is to be resolved in favor of the insured. *Fireman's Fund Ins. Co. v. Chasson*, 207 Cal.App.2d 801, 805, 24 Cal. Rptr. 726 (1962). The complaint filed against the insured is to be examined to determine if it "*potentially* seeks damage within the coverage of the policy", *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 112, 419 P.2d 168, 176 (1965). The duty to defend is broader than the duty to indemnify. *Val's Painting and Drywall, Inc. v. Allstate Insurance Co.*, 53 Cal.App.3d 576, 584, 126 Cal.Rptr. 267 (1975).

 As discussed *supra,* the Indio suit does allege some damages which are within the provisions of the Insuring Agreement. While admittedly the majority of any recovery against Sears in that suit will arise from the costs of replacement materials which Sears will be precluded from recovering under Exclusions P and Q, still the presence of any potential recovery within the scope of the Insuring Agreement will obligate St. Paul to defend Sears under California law and under the absolute terms of the Insuring Agreement.

### III. CONCLUSION

The District Court's partial summary judgment order, and order awarding attorney's fees and court costs to St. Paul, are each reversed, and the case remanded for further proceedings consistent with this opinion.