963 F.2d 380
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED COASTAL INSURANCE COMPANY,
Plaintiff-counter-defendant-Appellant,
v.
STRATEGIC ORGANIZATIONAL SYSTEMS INTERNATIONAL, INC.,
Defendant-counter-claimant-Appellee.
 No. 90-16340.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 15, 1992.
Order of Limited Remand Jan. 17, 1992.
Decided May 13, 1992.
 
 Before TANG, PREGERSON and BOOCHEVER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 United Coastal Insurance Company ("United Coastal") issued a comprehensive general liability insurance policy to Strategic Organizational Systems International, Inc. ("Strategic") specifically covering Strategic's asbestos abatement work at McAteer High School. The San Francisco Unified School District ("SFUSD") subsequently sued Strategic in California state court for property damage and credits to the contract incurred during the course of the asbestos project. Strategic requested that United Coastal defend it in the state court action. United Coastal, while agreeing to defend Strategic under a reservation of rights, filed a declaratory judgment action in federal district court seeking a declaration that it had no obligation to defend Strategic. The district court granted summary judgment in favor of Strategic. United Coastal appeals. We affirm.
 
 DISCUSSION
 I. Scope of United Coastal's Duty to Defend
 
 3
 United Coastal argues that the district court erred in extending its duty to defend to claims not potentially covered by the liability insurance policy. United Coastal contends that it need only reimburse Strategic for defense costs incurred in the defense of those claims arguably falling under the policy. We disagree.
 
 
 4
 Under California law, an insurer's duty to defend is broader than its duty to indemnify. St. Paul Fire & Marine Ins. Co. v. Sears, Roebuck & Co., 603 F.2d 780, 786 (9th Cir.1979); Ohio Casualty Ins. Co. v. Hubbard, 208 Cal.Rptr. 806, 809 (Cal.Ct.App.1984); Eichler Homes, Inc. v. Underwriters at Lloyd's, London, 47 Cal.Rptr. 843, 847 (Cal.Ct.App.1965); see also Gray v. Zurich Ins. Co., 419 P.2d 168, 173-75 (Cal.1966). The duty to defend attaches whenever the underlying complaint "potentially seeks damages within the coverage of the policy." Gray, 419 P.2d at 176 (original emphasis); see also Bowie v. Home Ins. Co., 923 F.2d 705, 707 (9th Cir.1991) ("[U]nder California law an insurer's duty to defend is not judged solely by the allegations of a third party complaint, but rather an insurer must defend any suit in which the claim alleged is potentially within the coverage of the policy."); St. Paul, 603 F.2d at 786 (same). Any doubt as to the existence of the duty to defend must be resolved in favor of the insured (Strategic) and against the insurer (United Coastal). Eichler, 47 Cal.Rptr. at 847. United Coastal concedes that a number of SFUSD's claims for relief involve property damage potentially covered by Strategic's policy.
 
 
 5
 United Coastal's effort to limit its duty to defend to potentially covered claims fails for three reasons.
 
 1. The Text of the Insurance Contract
 
 6
 The insurance policy expressly obligates United Coastal to defend Strategic against "any suit" seeking property damages.[1] Had United Coastal intended to restrict its duty to defend to only potentially covered claims, it should have said so in the policy. "In construing the language of an insurance policy, a court should give the words used their plain and ordinary meaning, unless the policy clearly indicates to the contrary." Giddings v. Industrial Indem. Co., 169 Cal.Rptr. 278, 280 (Cal.Ct.App.1980). United Coastal cites no language in the policy that "clearly indicates" that the word "suit" actually means just "claims." See also Gray, 419 P.2d at 171 ("[A]ny exception to the performance [by the insurer] of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect."); Ritchie v. Anchor Casualty Co., 286 P.2d 1000, 1007 (Cal.Dist.Ct.App.1955) ("If the insurer would create an exception to the general import of the [duty to defend] clauses, the burden rests upon it to phrase that exception in clear and unmistakable language.").
 
 2. California Case Law
 
 7
 Numerous decisions of the California courts have expressly enforced an insurer's duty to defend despite the existence of non-covered claims in the litigation. In Hogan v. Midland Nat'l Ins. Co., 476 P.2d 825 (Cal.1970), the California Supreme Court observed that the duty to defend attached in cases where "various theories of recovery were asserted by the plaintiff only one or more of which were within the coverage of the policy." Id. at 831.
 
 
 8
 Similarly, in Blackfield v. Underwriters at Lloyd's, London, 53 Cal.Rptr. 838 (Cal.Ct.App.1966), the California Court of Appeal held that "if one of several causes of action alleged against the insured is covered by the policy the insurer is bound to defend the action." Id. at 841, cited in Hogan, 476 P.2d at 831. The Blackfield court, having found that one cause of action potentially fell under the policy, found it "unnecessary to review the remaining counts." Id.
 
 
 9
 Again, in Ritchie, the court of appeal held: "If the complaint filed against the insured alleges several causes of action some of which are not covered by the policy but one or more being in its terms, the insurer is bound to defend the action." 286 P.2d at 1006; see also Hubbard, 208 Cal.Rptr. at 812 (insurer must defend against both compensatory and punitive damage claims even though insurer not bound to indemnify a punitive damages award); California Union Ins. Co. v. Club Acquarius, 169 Cal.Rptr. 685, 687 (Cal.Ct.App.1980) ("An insurer, bound to defend an action against its insured, must defend against all of the claims involved in that action, even though some (or as in this case all) of them ultimately result in recovery for damages not covered by the policy."); Commercial Ins. Co. v. Pressley, 53 Cal.Rptr. 220, 224 (Cal.Dist.Ct.App.1966) (duty to defend enforced where "one of the causes of action pleaded in the complaint" fell within the insurance policy's scope) (emphasis added); Eichler Homes, 47 Cal.Rptr. at 847 (duty to defend lawsuit attaches even though potentially covered claims are "separate and distinct" from non-covered claims); cf. Gray, 419 P.2d at 176 n. 15 (no duty to defend where the complaint "can by no conceivable theory raise a single issue which could bring it within the policy coverage") (emphasis added); Giddings, 169 Cal.Rptr. at 282 (no duty to defend where "none of the three federal actions ... potentially sought recovery for 'property damage' ") (emphasis added).
 
 
 10
 In decisions applying California law on the duty to defend, this court has echoed the California courts' expansive interpretation of the duty to defend. In St. Paul Fire & Marine Ins., we imposed the duty to defend an entire lawsuit on the insurer even though "the majority of any recovery ... will arise from" damages expressly excluded from coverage under the policy. 603 F.2d at 786. "[T]he presence of any potential recovery within the scope of the Insuring Agreement," we explained, "will obligate St. Paul to defend Sears under California law...." Id.; see also Bowie, 923 F.2d at 709 (observing that, under California law, "once an insured is sued, an insurer who learns of potential liability of its insured is obligated to defend even claims not covered by the policy so long as conduct, the nature and kind of which ordinarily would be covered, has occurred").
 
 
 11
 United Coastal attempts to distinguish these authorities by arguing that this is a case of first impression because Strategic's covered and non-covered claims arise from separate and distinct factual scenarios. The difficulty with this contention is twofold.
 
 
 12
 First, whether or not the claims arise from differing "nuclei of fact," depends entirely on the parties' subjective definitions of the factual backdrop for this dispute. United Coastal attempts to balkanize the litigation into individual, unrelated claims. Strategic, on the other hand, paints a more unified picture of the litigation, portraying the various causes of action as factually and legally interdependent. United Coastal's effort to segregate artificially SFUSD's claims into mini-lawsuits ignores the practical realities of modern-day commercial litigation and thus constitutes an insufficient basis for distinguishing the California precedents.
 
 
 13
 Second, and more importantly, the California Court of Appeal has expressly imposed its broad definition of the duty to defend in a case where the potentially covered claims were "separate and distinct" from the non-covered claims. Eichler, 47 Cal.Rptr. at 847. In Eichler, the plaintiffs in the underlying action alleged damages for the replacement and repair of a negligently installed radiant heating system--damages specifically excluded from the insurer's duty to defend under the insurance policy. However, because the plaintiffs simultaneously sought damages "that are separate and distinct from any claim based upon the cost or replacement of the defective heating system itself," such as lost property value and structural damage to the house, the court of appeal held that the insurer was bound to defend the action. Id.
 
 
 14
 In sum, we reject United Coastal's effort to characterize this as a case of first impression. Even assuming United Coastal is correct in characterizing its factual situation as unique, we are guided in our effort to predict how the California courts would define the duty to defend in this case by the numerous opinions extending the duty to defend to encompass entire lawsuits and not just potentially covered claims. While a case may arise where the potentially covered claims are so insignificant and the non-covered claims so numerous that the California courts would reverse their trend, this is not such a case. United Coastal does not dispute that a substantial number of SFUSD's claims and a significant percentage of the damages sought constitute potentially covered claims under Strategic's liability insurance policy.[2]
 
 3. Contractual Expectations
 
 15
 Truncating the insurer's duty to defend in the manner advocated by United Coastal also runs afoul of the rule that the scope of the duty to defend must be commensurate with the reasonable expectations of the insured. In Gray, the California Supreme Court extended the insurer's duty to defend to intentional, as well as non-intentional, conduct because the insured could have reasonably expected such coverage. 419 P.2d at 173 ("An examination of the policy discloses that the broadly stated promise to defend is not conspicuously or clearly conditioned solely on a non-intentional bodily injury; instead, the insured could reasonably expect such protection."). Central to the court's conclusion were the facts that (i) the policy was a general liability policy, "the designation in itself connot[ing] general protection," id.; (ii) the injury at issue was of the "nature and kind" for which the particular insurance was sought, id. at 175; and (iii) the limitation advanced by the insurer was not clearly or plainly expressed in the policy, id. at 173. See also Wint v. Fidelity & Casualty Co., 507 P.2d 1383, 1388 (Cal.1973); Dyer v. Northbrook Property & Casualty Ins. Co., 259 Cal.Rptr. 298, 304 (Cal.Ct.App.1989); Ohio Casualty, 208 Cal.Rptr. at 811-12; cf. Fire Ins. Exch. v. Jiminez, 229 Cal.Rptr. 83, 85 (Cal.Ct.App.1986) (no duty to defend where no reasonable insured could have expected coverage to extend).
 
 
 16
 Strategic, like the insured in Gray, reasonably could have expected that United Coastal would defend lawsuits, not just claims seeking property damage. It too obtained a general liability insurance policy for the very purpose of protecting against "suit[s]" alleging property damage in connection with its work at McAteer High School. The claims leveled by SFUSD are of the "nature and kind" protected by the policy. Moreover, the limitation on the scope of the duty to defend that United Coastal seeks to impose appears nowhere in the policy. The conspicuousness and specificity that Gray and its progeny demand for carving out exceptions to the general duty to defend are distinctly lacking in this instance. We thus hold that the duty to defend extends to non-covered claims because Strategic reasonably expected such a comprehensive defense.
 
 
 17
 In sum, the policy's language, the decisions of California courts, and the insured's reasonable expectations all counsel against our adoption of United Coastal's proposed limitation on the duty to defend. The decision to restrict so dramatically the duty to defend must be left to the California courts in the first instance. We have before us only the limited task of predicting how the California courts would answer United Coastal's argument. As noted, California case law and the language of the policy leave little room for fashioning the exception advocated by United Coastal.
 
 II. Segregation/Allocation of Costs
 
 18
 United Coastal argues that the district court erred in not ordering Strategic to segregate and allocate its defense costs between covered and non-covered claims. We affirm the district court's judgment on this issue.
 
 1. Segregation
 
 19
 Although United Coastal raises segregation as a separate issue from allocation, its brief fails to explain how this claim for relief differs from its parallel request for allocation. To the extent segregation entails a duty to separate costs as they are incurred throughout the course of litigation, as opposed to a retroactive allocation of costs, United Coastal's argument is moot. The SFUSD action has settled, so no additional defense costs are accruing.
 
 2. Allocation
 
 20
 United Coastal argues that an allocation should be made and that Strategic bears the burden of proving that its defense costs are traceable to potentially covered claims. We reject this contention.
 
 
 21
 First, California cases permitting an allocation between covered and non-covered claims have made it conditional on the insurance company's introduction of "undeniable evidence of the allocability of specific expenses." Hogan, 476 P.2d at 831; see also Stalberg v. Western Title Ins. Co., 282 Cal.Rptr. 43, 50 (Cal.Ct.App.1991) (failure of insurer to prove that defense costs could be logically allocated obliges insurer to pay full defense costs) (citing Hogan ).
 
 
 22
 Second, United Coastal does not cite a single California case imposing the burden of allocation on the insured. Bertero v. National Gen. Corp., 529 P.2d 608 (Cal.1974), on which United Coastal relies, is inapt. Bertero concerned the allocation of damages (including the costs of defense) in a malicious prosecution case. Id. at 620-23. Indeed, the California Supreme Court, citing Hogan, specifically distinguished duty to defend cases where the insurer labors under a "preexisting duty at least to initiate a defense." Id. at 623.
 
 
 23
 In fact, the rationale of Bertero counsels in favor of imposing any allocation burden on United Coastal. In Bertero, the California Supreme Court held that the burden of proving apportionment "must rest with the party whose malicious conduct created the problem. To place the burden on the injured party rather than upon the wrongdoer would, in effect, clothe the transgressor with immunity when because of the interrelationship of the defense and cross-action, the injured party could not apportion his damages." Id. at 620. Strategic, like the injured party in Bertero, must not be forced to prove its entitlement to each cent of its defense expenditures. Strategic paid for a service--a defense--it has never received. United Coastal has neither supplied attorneys nor paid for any of Strategic's defense costs, despite admitting that some of SFUSD's claims fell within the scope of its duty to defend. Saddling insureds with the allocation burden would simply reward insurers' reticence and abdication of their contractual duties, because by delaying the insurers could avoid paying as much in defense costs as they would have incurred defending the entire action. "Sustaining such a theory ... would tend ... to encourage insurance companies to similar disavowals of responsibility with everything to gain and nothing to lose." Gray, 419 P.2d at 179 (quoting Arenson v. National Auto. & Casualty Ins. Co., 310 P.2d 961, 968 (Cal.1957)); see also Mullen, 140 Cal.Rptr. at 611-12.
 
 
 24
 United Coastal's invocation of San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc., 208 Cal.Rptr. 494 (Cal.Ct.App.1984), is also unhelpful. Cumis addressed only the question of whether the insurer must pay the fees of independent counsel when a conflict of interest precludes the insurer from using its own counsel to fulfill a duty to defend. Id. at 505-06. The question of allocation never arose in Cumis.
 
 
 25
 United Coastal further argues that Hogan's heightened burden should not obtain in this case because, unlike the insurer in Hogan, United Coastal did not breach its duty to defend. While technically this may be correct, by refusing either to provide counsel or to pay any defense expenses, United Coastal leaves itself in a factually analogous position to the insurer in Hogan. Having sat back as litigation proceeded, United Coastal has helped produce a situation where "any precise allocation of expenses ... would be extremely difficult." 476 P.2d at 831. As between the insured and the insurer who failed to act to protect its own interests, the latter must bear the brunt of the allocation difficulties. Cf. id. at 831; Stalberg, 282 Cal.Rptr. at 50.
 
 
 26
 Third, imposing the burden of proving an entitlement to allocation on United Coastal, rather than Strategic, would be consistent with the general principle of insurance law that, once an insured shows an entitlement to the benefits provided by a policy, the burden shifts to the insurer to prove an exclusion or exception to payment. See, e.g., Dyer, 259 Cal.Rptr. at 302; Royal Globe Ins. Co. v. Whitaker, 226 Cal.Rptr. 435, 437 (Cal.Ct.App.1986). By demonstrating that the SFUSD action was a "suit ... seeking damages on account of ... property damage" potentially covered by the policy, Strategic proved its entitlement to defense costs. To the extent that United Coastal now seeks to relieve itself from some costs, the burden of proving an exception rests with it.
 
 
 27
 Finally, United Coastal argues that placing the allocation burden on it leads to an unfair subsidy of Strategic's costs incurred in defending Indiana Lumbermens Mutual Insurance Company and prosecuting its cross-appeal. The district court's decision, however, did not impose an inequitable obligation on United Coastal. Costs exclusively attributable to these other lawsuits are expressly excluded from reimbursement by the district court's order. Some expenses no doubt will overlap between the three lawsuits. But to the extent United Coastal was already obliged to bear an expenditure under the liability insurance policy, the mere fortuity that the same defense measure proved of use in another lawsuit does not by itself relieve United Coastal of its duty to pay.
 
 CONCLUSION
 
 28
 The district court correctly ordered United Coastal to defend both potentially covered and non-covered claims in the SFUSD complaint. We also affirm the district court's refusal to saddle Strategic with the burden of segregating or allocating its defense costs.
 
 
 29
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The district court defined United Coastal's duty to defend in terms of "suits." While United Coastal had to defend the SFUSD suit, it did not have to defend the suit against Indiana Lumbermens Mutual Insurance Company nor was it obliged to represent Strategic in its counter-suit against SFUSD
 
 
 [2]
 We also reject United Coastal's effort to exclude the claim of intentional damage to the electrical system from the list of potentially covered claims. The California courts leave little doubt that a policy's exclusion for intentional conduct does not relieve the insurer of the duty to defend when, as here, damages could still be recovered even if the insured's conduct were merely negligent. See, e.g., Gray, 419 P.2d at 176-77; Mullen v. Glens Falls Ins. Co., 140 Cal.Rptr. 605, 610 (Cal.Ct.App.1977); Firco, Inc. v. Fireman's Fund Ins. Co., 343 P.2d 311, 314 (Cal.Dist.Ct.App.1959)