**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RANDY KAADY,
*Plaintiff-Appellant*,

v.

MID-CONTINENT CASUALTY
COMPANY, an Ohio corporation,
*Defendant-Appellee*.

No. 13-35036

D.C. No.
3:11-cv-00706-
MO

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted
October 7, 2014—Portland, Oregon

Filed June 25, 2015

Before: Alex Kozinski, Ferdinand F. Fernandez
and Raymond C. Fisher, Circuit Judges.

Opinion by Judge Kozinski

# SUMMARY[*]

## Insurance Law

The panel reversed the district court's summary judgment in favor of insurer Mid-Continent Casualty Company because there was a triable issue whether the insured's claim for property damage under Mid-Continent's commercial general liability insurance policy was barred by the policy's known-loss provision, and remanded.

The insured, as part of a subcontract, affixed manufactured stone to buildings in a multi-unit residential project, and cracks developed in the manufactured stone. In an underlying action, the insured settled a claim against him; Mid-Continent denied the claim and the insured brought this diversity action. The district court held that there was relevant property damage prior to the insured obtaining the policy, and that this damage was known to the insured.

First, the panel rejected Mid-Continent's argument that so long as the insured knew about any damage to the structure, the known-loss provision barred coverage of any other damage to the same structure. The panel held under Oregon law that the insured's knowledge of damage to his own work did not automatically constitute knowledge of damage to the components of the structure furnished by others; but rather the correct inquiry was whether the claimed damage to the structural components was a "continuation, change or resumption" of the cracks.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Second, the panel held that Mid-Continent did not establish its contention that the damage for which the insured sought coverage was in fact a "continuation, change or resumption" of earlier cracks.  The panel held that summary judgment was inappropriate where there was no record evidence connecting the cracks in the masonry that the insured observed before the policy to the damage to the wooden components for which the insured claimed coverage.

## COUNSEL

Robert C. Muth and Peter J. Viteznik (argued), Kilmer, Voorhees & Laurick, P.C., Portland, Oregon for Plaintiff-Appellant.

Douglas G. Houser, Matthew E. Hedberg (argued) and Janis C. Puracal, Bullivant Houser Bailey, P.C., Portland, Oregon, for Defendant-Appellee.

**OPINION**

KOZINSKI, Circuit Judge:

We explore the meaning of a "known-loss" provision in a commercial general liability insurance contract.

## I.  Facts

Kaady, who is a mason by profession, was awarded a subcontract for the installation of manufactured stone[1] at the Collins Lake Resort, a multi-unit residential project. Kaady affixed manufactured stone to the wall sheathing[2] of certain buildings, wrapped deck posts with manufactured stone and installed masonry caps on the top of the stone that was wrapped around the deck posts. Construction was completed in May 2006.

In September 2006, Kaady was called back to Collins Lake to inspect cracks in the manufactured stone and masonry caps he installed. He told the general contractor that the cracks "had something to do with settling, being struck,

---

[1] Manufactured stone is molded concrete veneer that is shaped and painted to look like stone or brick. When applied to the outer surface of a wall or column, it produces the illusion that the surface to which it is applied is made up of solid rocks or bricks. In his briefs and declaration, Kaady uses the term "cultured stone," but "Cultured Stone" is the trademark of a manufactured stone produced by Boral (formerly Owens Corning). Mindful of the harm caused by promiscuous use of trademarks to describe generic products, we use the term "manufactured stone" instead.

[2] Wall sheathing consists of flat panels that are attached to the structure's frame. It serves as an additional layer of protection from the outside elements and strengthens the structure by increasing its rigidity.

or the substrate contracting or expanding." In December 2006, almost three months after he had inspected the cracks, Kaady bought a one-year commercial general liability insurance policy from Mid-Continent.

In June 2007, the Collins Lake Homeowners' Association sued the developer of the project, who sued the general contractor, who in turn sued all the relevant subcontractors including Kaady. The Homeowners' Association alleged that portions of the structures were damaged as a result of defective workmanship. Kaady settled the claim against him and tendered it to Mid-Continent for indemnification. Mid-Continent denied the claim and Kaady brought this lawsuit. He claims that the damage to the structures for which he was sued in the underlying litigation—deterioration of the deck posts and wall sheathing behind the manufactured stone—was "property damage" covered by Mid-Continent's policy.

The district court granted summary judgment to Mid-Continent on the ground that Kaady's claim was barred by the policy's known-loss provision. According to the district court, "there was relevant property damage prior to [Kaady's] obtaining the policy," which was "known to Mr. Kaady prior to obtaining the policy." Kaady appeals and we review de novo. *Assurance Co. of Am.* v. *Wall & Assocs. LLC*, 379 F.3d 557, 560 (9th Cir. 2004). Our interpretation of Mid-Continent's policy is governed by Oregon law. *See Mid-Century Ins. Co.* v. *Perkins*, 149 P.3d 265, 268 (Or. Ct. App. 2006).

## II. Discussion

Kaady claims that the damage to the deck posts and wall sheathing under the manufactured stone he installed is "property damage" covered by the policy. The policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property." Mid-Continent does not dispute that "property damage" occurred or that it was caused by Kaady. Rather, Mid-Continent argues that Kaady's claim is barred because he bought the policy after he already knew of the loss. Mid-Continent relies on the policy's known-loss provision, which states that the policy "applies to . . . 'property damage' only if . . . no insured . . . knew that the . . . 'property damage' had occurred, in whole or in part."

Kaady admits that he was aware of cracks in the manufactured stone and masonry caps he installed before he purchased the policy, but states under oath that he didn't know about any of the damage for which he seeks indemnity: the damage to the deck posts and wall sheathing behind the masonry. Mid-Continent has proffered no evidence contradicting Kaady's declaration. Mid-Continent nevertheless argues that, even if Kaady didn't know about the damage to the deck posts and wall sheathing before he purchased the policy, Kaady's knowledge of the cracks in the manufactured stone he installed suffices to bar coverage. It presents two arguments supporting that interpretation.

**A.** Mid-Continent first argues that, so long as the insured knew about *any* damage to a structure, the known-loss provision bars coverage of any other damage to the same structure. According to Mid-Continent, Kaady's manufactured stone and the underlying structural components

are the same "property." Thus, once Kaady noticed that the manufactured stone was cracked, he knew that the property was damaged and so could not recover for *any* damage to that property. Mid-Continent claims that its interpretation follows because the policy deems "'property damage' . . . to have been known to have occurred at the earliest time when any insured . . . [b]ecomes aware . . . that . . . 'property damage' has occurred or begun to occur."

But the question of whether Kaady's knowledge of the cracks automatically precludes coverage of damage to the structural components depends on the level of generality at which "tangible property" and "physical injury" are defined. Is the "property" we must examine the structure as a whole or only the components—the deck posts and wall sheathing—that Kaady claims coverage for? And does prior knowledge of one type of physical injury to property automatically preclude coverage of all types of physical injury to the property? Because the policy doesn't define "tangible property" or "physical injury," we must examine the policy as a whole to determine how the "ordinary purchaser of [commercial general liability] insurance" would understand these terms. *See St. Paul Fire & Marine Ins. Co.* v. *McCormick & Baxter Creosoting Co.*, 923 P.2d 1200, 1213 (Or. 1996) (quoting *Botts* v. *Hartford Acc. & Indem. Co.*, 585 P.2d 657, 659 (Or. 1978)); *see also Hoffman Constr. Co.* v. *Fred S. James & Co.*, 836 P.2d 703, 706–07 (Or. 1992).

First, we are unpersuaded by Mid-Continent's argument that we should not treat components the insured provided and components provided by others as separate "property." In the construction context, a commercial general liability insurance policy necessarily distinguishes between the components the insured provided and components furnished by others. That's

because the policy is designed to cover damage to property that is installed by others, but exclude damage to property the insured provided. *See* 9A Steven Plitt et al., *Couch on Insurance* §§ 129:1, 129:17 (3d ed. 2014); *see also* Gregory G. Schultz, *Commercial General Liability Coverage of Faulty Construction Claims*, 33 Tort & Ins. L.J. 257, 261 (1997). Once the insured's work is complete, the policy covers damage to property provided by others, including property that the insured's work was "performed on,"[3] but it doesn't cover damage to the insured's own product or work. Mid-Continent doesn't argue on appeal that the claimed damage was to property that Kaady provided (nor could it). *See St. Paul Fire & Marine Ins. Co.* v. *Sears, Roebuck & Co.*, 603 F.2d 780, 783–84 (9th Cir. 1979); *Wilshire Ins. Co.* v. *RJT Constr., LLC*, 581 F.3d 222, 226–27 (5th Cir. 2009); *see also* Schultz, *Commercial General Liability Coverage of Faulty Construction Claims*, 33 Tort & Ins. L.J. at 272. Mid-Continent has offered no reason to treat the insured's work and the work of others as different property in every provision of the policy except the known-loss provision. Thus, we conclude that the known-loss provision also distinguishes between them. The insured's knowledge of damage to his own work doesn't automatically constitute

---

[3] Pursuant to the "[p]roducts-completed operations hazard" provision, once the insured completes his work, the policy provides coverage for "'property damage' occurring away from premises [the insured] own[s] or rent[s] and arising out of '[the insured's] product' or '[the insured's] work.'" For example, if a roof installed by the insured leaks, resulting in water damage to another part of the house, that water damage would be covered but any damage to the roof itself would not be. *See* Robert J. Franco, *Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies*, 30 Tort & Ins. L.J. 785, 796–97 (1995); *see also St. Paul Fire & Marine Ins. Co.* v. *Sears, Roebuck & Co.*, 603 F.2d 780, 783–84 (9th Cir. 1979).

knowledge of damage to the components of the structure furnished by others.[4]

Mid-Continent's position faces a second difficulty: Even if the masonry and underlying structural components were considered the same "property," the claimed damage (deterioration of the deck posts and wall sheathing) is a different *type* of damage than the known damage (cracks in the masonry). Mid-Continent suggests that the insured's prior knowledge of any damage to property bars coverage for any other damage to that property, regardless of its type. But the known-loss provision bars coverage of "property damage" if the insured "knew that *the* . . . 'property damage' had occurred, in whole or in part." (Emphasis added.) Use of the definite article "particularizes the subject which it precedes" and indicates that the claimed damage must be the same as the known damage. *See Gale* v. *First Franklin Loan Servs.*, 701 F.3d 1240, 1246 (9th Cir. 2012) (internal quotation marks omitted). Such an interpretation makes sense considering that a commercial general liability insurance policy covers (as its name implies) many different types of hazards that have no relationship to one another. Thus, an insured's knowledge of one type of damage to property doesn't automatically

---

[4] Kaady argues that the cracks in the masonry aren't "property damage" at all because they were damage to Kaady's own work. But nothing in the policy says that the insured's work isn't "tangible property," or that physical injury to the insured's own work isn't "property damage." Rather, damage to the insured's own work isn't "'property damage' to which this insurance applies," because damage to the insured's own work is excluded under the "your product" and "your work" exclusions. Thus, while we agree with Kaady that the components the insured provided and the components provided by others should be considered separate "property," we reject his argument that damage to the insured's own work isn't "property damage."

constitute knowledge of any and all damage to the property; the claimed damage must be related to the known damage.

Mid-Continent's proffered interpretation would eviscerate the known-loss provision's "continuing property damage" language. The provision states that if the insured "knew, prior to the policy period, that the . . . 'property damage' occurred, then any continuation, change or resumption of *such* . . . 'property damage' during or after the policy period will be deemed to have been known prior to the policy period." (Emphasis added.) But if the insured's knowledge of any damage to any part of the structure automatically barred coverage of all damage to that structure, it wouldn't matter whether the claimed damage was a "continuation, change or resumption" of the known damage. The problem is avoided if the known-loss provision is interpreted as barring coverage only if the claimed damage is a "continuation, change or resumption" of the known damage. This interpretation permits coverage of damage unrelated to the damage known before acquisition of the policy, but prevents insurance of a loss in progress.

Applying our interpretation of the policy to Kaady's claim, we conclude that Kaady's knowledge of the cracks in the masonry before he bought the policy doesn't constitute knowledge of the claimed "property damage" to the structural components. Not only are the wooden deck posts and wall sheathing different "property" than the manufactured stone and masonry caps, the claimed damage is of a different type. We don't think that the ordinary purchaser of the policy would interpret the known-loss provision as broadly as Mid-Continent advocates. Rather, the correct inquiry is whether the claimed damage to the structural components was a "continuation, change or resumption" of the cracks. If it was,

Kaady's knowledge of the cracks would bar coverage of the claimed damage; if not, his knowledge of the cracks wouldn't bar coverage.

**B.**  Mid-Continent also argues that the damage for which Kaady seeks coverage was in fact a "continuation, change or resumption" of the earlier cracks.   According to Mid-Continent, it's "undisputed that the cracks in the masonry permitted water intrusion" and, therefore, that the damage to the wooden deck posts and wall sheathing "flowed from" the cracks.  But Kaady *did* dispute this contention in the district court.  In his opposition to summary judgment, Kaady argued that Mid-Continent had not "submitted any evidence [that] the cracks in the top caps were the source, cause or basis of the damage to the deck posts."  Kaady's admission that the damage to the deck posts and wall sheathing arose from his defective workmanship is not an admission that the damage was caused by the *cracks*.

In any event, it was not Kaady's burden to present evidence disputing the connection between the cracks in the manufactured stone and the damage to the underlying structure.  On summary judgment, the moving party has the initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted); *see also* 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2727 (3d ed. 2015). The parties haven't stipulated to any facts and nothing in the scant evidentiary record proffered by Mid-Continent—which consists solely of Kaady's declaration, Kaady's deposition in the underlying construction defect litigation and some barely

viewable photographs of the structures—explains the relationship, if any, between the cracks and the underlying structural damage. Because Mid-Continent hadn't met its initial burden of presenting evidence supporting its theory, there was nothing for Kaady to dispute.

It may well be that the cracks in the masonry allowed water to seep in and damage the wood beneath. If so, then the claimed damage might well be considered a "continuation, change or resumption" of the cracks.[5]  But without any record evidence connecting the cracks in the masonry that Kaady observed before he bought the policy to the damage to the wooden components for which Kaady claims coverage, summary judgment was inappropriate. *See St. Paul Fire & Marine Ins. Co.*, 603 F.2d at 785–86; *Westfield*, 840 N.W.2d at 454–55.

**REVERSED and REMANDED.**

---

[5] In *Westfield Insurance Co.* v. *Wensmann, Inc.*, 840 N.W.2d 438 (Minn. Ct. App. 2013), the court stated that, in order for the claimed damage to be a "continuation, change or resumption" of the known damage, the two must "share the same cause." *Id.* at 453. Similarly, in *Alkemade* v. *Quanta Indemnity Co.*, 28 F. Supp. 3d 1125 (D. Or. 2014), the court stated that the claimed damage is a "continuation, change or resumption" of the known damage at least when the two are "damage of the same type, from the same cause." *Id.* at 1131. We have no occasion to decide whether these two interpretations are correct under Oregon law.