**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT



FILED

SEP 09 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AMERON INTERNATIONAL CORPORATION; et al., <br><br> Plaintiffs-counter-defendants, <br><br> And <br><br> AMERICAN HOME ASSURANCE COMPANY, <br><br> Defendant-counter-claimant - Appellee, <br><br> v. <br><br> GREENWICH INSURANCE COMPANY, <br><br> Plaintiff-counter-defendant - Appellant. | No. 13-55838 <br><br> D.C. No. 2:12-cv-08582-R-VBK <br><br> MEMORANDUM[*] |
| AMERON INTERNATIONAL CORPORATION and AMERON B.V., <br><br> Plaintiffs-counter-defendants - Appellants, | No. 13-55850 <br><br> D.C. No. 2:12-cv-08582-R-VBK |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

And

GREENWICH INSURANCE
COMPANY,

        Plaintiff-counter-defendant,

v.

AMERICAN HOME ASSURANCE
COMPANY,

        Defendant-counter-claimant -
Appellee.

---

AMERON INTERNATIONAL
CORPORATION and AMERON B.V.,

        Plaintiffs-counter-defendants
- Appellants,

And

GREENWICH INSURANCE
COMPANY,

        Plaintiff-counter-defendant,

v.

AMERICAN HOME ASSURANCE
COMPANY,

        Defendant-counter-claimant -
Appellee.

No. 13-56105

D.C. No. 2:12-cv-08582-R-VBK

| | |
|---|---|
| AMERON INTERNATIONAL CORPORATION; et al., | No. 13-56106 |
| Plaintiffs-counter-defendants, | D.C. No. 2:12-cv-08582-R-VBK |
| And | |
| GREENWICH INSURANCE COMPANY, | |
| Plaintiff-counter-defendant - Appellant, | |
| v. | |
| AMERICAN HOME ASSURANCE COMPANY, | |
| Defendant-counter-claimant - Appellee. | |

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted May 4, 2015
Pasadena, California

Before: NOONAN, WARDLAW, and MURGUIA, Circuit Judges.

Ameron International Corporation and its subsidiary Ameron B.V.

(collectively, "the Ameron parties"), along with Greenwich Insurance Company,

appeal the district court's grant of summary judgment in favor of American Home

Assurance. We have jurisdiction under 28 U.S.C. § 1291. Reviewing the district court's summary judgment de novo, *Anthem Elecs., Inc. v. Pac. Emp'rs Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002), we reverse and remand.

The Ameron parties supplied paint that was affixed to various onshore and offshore facilities in a large natural gas production project in Nova Scotia, Canada. The organization behind the project is now suing the Ameron parties for paint failure, which allegedly caused corrosion of the underlying steel structure and pipelines. The Ameron parties seek defense costs for this action under the terms of a general liability policy issued by American Home Assurance.

In California, an insurer "'must defend a suit which *potentially* seeks damages within the coverage of the policy.'" *Montrose Chem. Corp. v. Superior Court*, 861 P.2d 1153, 1157 (Cal. 1993) (in bank) (quoting *Gray v. Zurich Ins. Co.*, 419 P.2d 168, 176 (Cal. 1966)). This duty continues "until the underlying lawsuit is concluded or until it has been shown that there is *no* potential for coverage." *Id.* (internal citation omitted). To make that showing, the insurer must probe the absence of any potential for coverage "conclusively." *Anthem Elecs.*, 302 F.3d at 1055. Courts resolve any doubt as to whether the facts establish the existence of the defense duty in the insured's favor. *Id.* at 1054.

1. American Home Assurance argues that there is no potential for coverage under the policy's known damages provision, which precludes coverage for property damage that the insured "knew . . . had occurred, in whole or in part." The parties agree that the Ameron parties knew about paint failure at the project. However, an "insured's knowledge of damage to his own work doesn't automatically constitute knowledge of damage to the components of the structure furnished by others." *See Kaady v. Mid-Continent Cas. Co.*, -- F.3d ----, 2015 WL 3894394, at *2 (9th Cir. June 25, 2015); *Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 757 (9th Cir. 1996) ("[A]n insured's faulty workmanship is not 'property damage' under California law."), *overruled on other grounds by Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223–25 (9th Cir. 1998) (en banc).

Turning to the damage to the underlying steel, we agree with American Home Assurance that the record conclusively shows that the Ameron parties knew about corrosion to the underlying steel at the offshore facilities before the inception of the policy. However, that is not the end of our inquiry.

We must also ask: did the Ameron parties know about corrosion to the underlying steel at the onshore facilities and the pipelines?[1] We hold that there is

---

[1] The onshore and offshore facilities, as well as the pipelines, are all different "properties" for purposes of the policy. *See Kaady*, 2015 WL 3894394, at *3.

3

an issue of fact on this question. Although American Home Assurance has presented some evidence that the Ameron parties had pre-policy knowledge of corrosion and damage to the underlying steel at the onshore facilities and pipelines, none of this evidence is "conclusive[]." *See Anthem Elecs.*, 302 F.3d at 1054. Additionally, several key Ameron employees testified that they did not have knowledge of corrosion or other damage to the underlying steel at the onshore facilities until after the policy's inception. This testimony alone creates an issue of fact about the Ameron parties' knowledge. *See id.*

The next question is whether the corrosion damage to the onshore facilities and pipelines was a "continuation, change, or resumption" of the known corrosion damage at the offshore facilities. There is also an issue of fact on this question. American Home Assurance argues that "continuation, change, or resumption" refers to the same type or same cause of damage, regardless of how widespread or physically separated that damage is. Under this definition, American Home Assurance argues that the later corrosion at the onshore facilities and pipelines qualifies as a "continuation, change, or resumption" of the offshore property damage because the same paint continued to fail in the same ways giving rise to the same type of damage. However, even assuming that American Home's

4

interpretation of the policy is correct,[2] there are issues of fact as to whether the corrosion at the various locations shared a common cause. *See Montrose Chem. Corp.*, 861 P.2d at 1158; *see also Anthem Elecs.*, 302 F.3d at 1060. Given these issues of fact, there remains the "possibility" that the corrosion at the onshore facilities and pipelines is not a continuation, change, or resumption of the known damage at the offshore facilities and thus is within the policy's coverage. *See Montrose Chem. Corp.*, 861 P.2d at 1157 ("Facts extrinsic to the [underlying] complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy."); *see also Gray*, 419 P.2d at 276 ("[An insurer] cannot construct a formal fortress of the third party's pleadings and retreat behind its walls. . . . In light of . . . the plasticity of modern pleading, we should hardly designate the third party as the arbiter of the policy's coverage.").

2.     American Home Assurance also argues that there is no potential for coverage because the underlying action does not involve an "occurrence" within

---

[2] The Ameron parties and Greenwich argue that "continuation, change, or resumption" necessarily encompasses a geographic element. That is, property damage at the offshore facilities is separate and distinct from the property damage at the onshore facilities, even if the damage is the same type (corrosion) and same cause (defective paint). Under this competing definition of continuation, change, or resumption, the corrosion at the onshore facilities and the pipelines also was not a continuation of the corrosion seen at the offshore facilities and thus covered under the terms of the policy. Because there is a potential for coverage under either definition, we do not need to decide this issue.

5

the terms of the policy. Specifically, American Home Assurance argues that the corrosion at the Sable Project was not caused by an "accident" because the Ameron parties intentionally supplied the defective paint. But, the evidence does not conclusively show that the Ameron parties intended to supply defective or faulty paint. In light of this evidence, American Home Assurance cannot conclusively establish that Ameron intentionally (rather than negligently) supplied defective paint. Therefore, there remains a possibility that the property damage was caused by an "occurrence" and covered by the policy. *See Montrose Chem. Corp.*, 861 P.2d at 1161; *see also Anthem Elecs.*, 302 F.3d at 1060.

For the above reasons, we **REVERSE** the grant of summary judgment for defendant-appellee, **REVERSE** the denial of summary judgment to plaintiffs-appellants, **GRANT** partial summary judgment to plaintiffs-appellants on the duty to defend, and **REMAND** for proceedings consistent with this decision.

**REVERSED; REMANDED** with instructions.

6