**BAIN ENTERPRISES LLC, d/b/a Bain Construction, Plaintiff,**

v.

**MOUNTAIN STATES MUTUAL CASUALTY COMPANY and United Fire & Casualty Company, Defendants.**

**EP–14–CV–472–PRM**

United States District Court, W.D. Texas, El Paso Division.

Signed 08/01/2016

Francis S. Ainsa, Jr., Chantel Crews, Ainsa Hutson LLP, El Paso, TX, for Plaintiff.

Diana Macias Valdez, Law Office of Diana Macias Valdez, PLLC, El Paso, TX, Nathan T. Nieman, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Alburquerque, NM, Sean Carroll White, Kemp Smith, LLP, El Paso, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER ON PARTIES' MOTIONS FOR SUMMARY JUDGMENT

PHILIP R. MARTINEZ, UNITED STATES DISTRICT JUDGE

On this day, the Court considered the following:

- Plaintiff Bain Enterprises LLC's ("Bain") "Motion for Summary Judgment Against United Fire & Casualty Company" (ECF No. 51) [hereinafter "Bain's Motion"], filed on April 29, 2016;

- Defendant Mountain States Mutual Casualty Company's ("Mountain States") "Motion for Summary Judgment on its Cross–Claim Against United Fire & Casualty" (ECF No. 53) [hereinafter "Mountain States's Motion"], filed on April 29, 2016;

 - Defendant United Fire & Casualty Company's ("United Fire") "Response in Opposition to the Motions for Summary Judgment Filed by Bain . . . and Mountain States . . ." (ECF No. 56) [hereinafter "United Fire's Response"], filed on May 16, 2016;

- Defendant United Fire's "Motion for Summary Judgment" (ECF No. 52) [hereinafter "United Fire's Motion"], filed on April 29, 2016;

- Bain's "Response ... to United Fire['s] ... Motion for Summary Judgment" (ECF No. 59) [hereinafter "Bain's Response"], filed on May 16, 2016;

- Mountain States's "Response in Opposition to United Fire['s] ... Motion for Summary Judgment" (ECF No. 60) [hereinafter "Mountain States's Response"], filed on May 16, 2016;

- Defendant United Fire's "Motion to Strike Portions of Plaintiff's and Defendant Mountain States['s] Motion for Summary Judgment Affidavit" (ECF No. 54) [hereinafter "Motion to Strike"], filed on April 6, 2016;

 - Bain's "Response ... to United Fire['s] ... "Motion to Strike Portions of Plaintiff's and Defendant Mountain States ['s] ... Motions for Summary Judgment" (ECF No. 57) [hereinafter "Bain's Response to Motion to Strike"], filed on May 16, 2016; and

 - Mountain States's "Response in Opposition to United Fire['s] ... Motion to Strike Portions of Plaintiff's and Defendant Mountain States['s] ... Motion[s] for Summary Judgment Affidavit" (ECF No. 58) [hereinafter "Mountain States's Response to Motion to Strike"], filed on May 16, 2016,

in the above-captioned cause.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This declaratory action stems from an underlying state-court case in which the Town of Clint, Texas, and several residents (collectively referred to as "State–Court Plaintiffs") sued Bain in relation to construction work it performed within the Town of Clint. Bain is a general contractor that engages in the construction of water mains, sanitary sewer mains, storm drainage systems, and road construction. Pl.'s Compl. 4, Dec. 31, 2014, ECF No. 1 [hereinafter "Plaintiff's Complaint"]. Bain had a commercial general liability insurance policy with Mountain States, which provided coverage effective from December 8, 2001, through December 8, 2012. United Fire's Mot. Ex. B [hereinafter "Mountain States Policy"]. Bain later purchased a commercial general liability insurance policy from United Fire with coverage effective from December 8, 2012, through December 8, 2013. Bain's Mot. Ex. A; Mountain States's Mot Ex. A; United Fire's Mot. Ex. C [hereinafter "Policy"].

In 2011, Bain entered into an agreement with the Lower Valley Water District ("LVWD") to construct "Phase I" of a sanitary sewer system within the Town of Clint. Bain's Mot. 4; United Fire's Mot. 2. In the state-court action, the State–Court Plaintiffs alleged they had suffered damages due to Bain's negligent construction. Bain's Mot. Ex. E; Mountain States's Mot. Ex. E. Bain provided Mountain States with a copy of the state-court petition and Mountain States agreed to defend Bain. Pl.'s Compl. 6.

On September 13, 2013, while the state-court action was still pending, the Town of Clint experienced a severe rainstorm ("2013 Rainstorm"). United Fire's Mot. 4; Bain's Mot. 6; Mountain States's Mot. 6. The State–Court Plaintiffs subsequently filed an amended petition in the state-court action. United Fire's Mot. 4; Bain's Mot. 6; Mountain States's Mot. 6. Bain requested coverage from United Fire for the damages it claimed arose from the 2013 Rainstorm, but United Fire denied coverage on the basis that the damages were already known to Bain and the alleged coverage was precluded pursuant to the Policy. United Fire's Mot. 2; Bain's Mot. 7; Mountain States's Mot. 7.

Bain then requested coverage from Mountain States for the damages arising from the 2013 Rainstorm, and Mountain States informed Bain that it would not indemnify Bain for such damages because this storm occurred after the expiration of the Mountain States Policy. Mountain States's Mot. 8. Nevertheless, Mountain States continued to defend Bain in the underlying state-court action, "but reserved the right to seek recovery of defense fees and costs from damages attributed to the [2013] [R]ainstorm." *Id.*

Thereafter, Bain filed its Complaint in federal court on December 31, 2014, in which it sought declaratory judgment against Mountain States and United Fire. Pl's Compl. 1. Specifically, Bain sought "a declaration that one of the Defendants in this matter has a duty to defend and indemnify Bain against [the State–Court Plaintiffs'] amended claims of alleged additional damages from the [2013 Rainstorm]." *Id.* at 5.

Nine months later, in September 2015, Bain entered into a settlement agreement with the Town of Clint, which settled the claims asserted against Bain in the underlying state-court case. Bain's Mot. 3; Mountain States's Mot. 3. Shortly thereafter, "[i]n October of 2015, Bain and Mountain States reached an agreement wherein Mountain States agreed to pay money to Bain to partially fund the settlements with the [Town of Clint] ... in the underlying case in relation to the post-September 2013 storm damages." *Id.*

Mountain States then filed its crossclaim against United Fire for contribution and subrogation. Mountain States Mut. Cas. Co.'s Crosscl. Against United Fire & Cas. Co. 4–6, Dec. 7, 2015, ECF No. 40.

All parties have filed motions for summary judgment.

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute regarding a material fact exists if there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In a motion for summary judgment, "[t]he moving party bears the initial burden of showing that there is no genuine issue for trial; it may do so by 'point[ing] out the absence of evidence supporting the nonmoving party's case.'" *Nat'l Ass'n of Gov't Emps.*, 40 F.3d 698, 712 (5th Cir. 1994) (quoting *Latimer v. Smithkline French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990)). If the moving party has satisfied its initial burden, the nonmovant must then come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348, 'conclusory allegations,' *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), 'unsubstantiated assertions,' *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or only a 'scintilla' of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994)." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

A court conducting a summary-judgment analysis must "review the facts drawing all inferences most favorable to

the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). Thus, a court should "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (citing *Lujan*, 497 U.S. at 888, 110 S.Ct. 3177).

██ The "mere fact that both [parties move] for summary judgment does not warrant the grant of either motion if the record reflects a genuine issue of fact." *Hindes v. United States*, 326 F.2d 150, 152 (5th Cir. 1964).

### B. Interpretation of Insurance Policies

██ Pursuant to Texas law, "insurance policies are construed as are contracts generally, and must be interpreted to effectuate the intent of the parties at the time the contracts were formed." *Mid–Continent Gas. Co. v. JHP Dev. Inc.*, 557 F.3d 207, 212 (5th Cir. 2009) (citing *Kelley–Coppedge, Inc., v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998)). "When the words of a policy are unambiguous, they are to be given their plain, ordinary, and generally accepted meaning, unless the policy clearly indicates that the contractual terms have been used in a different technical sense." *Id.* (citing *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984)). "[W]hen the language of the policy is susceptible to more than one construction, it should be construed in favor of the insured." *Id.* (citing *Barnett v. Aetna*

*Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987)).

### III. ANALYSIS

Bain seeks summary judgment on its claim against United Fire for its failure to defend and indemnify Bain in the underlying state-court action. *See* Bain's Mot. Similarly, Mountain States seeks summary judgment on its contribution and subrogation claims against United Fire, which are dependent on United Fire's duty to defend and indemnify Bain. *See* Mountain States's Mot. United Fire also seeks summary judgment on both Bain's and Mountain States' claims against United Fire. *See* United Fire's Mot.

The Court will analyze the issues in the following order: (A) United Fire's Duty to Defend Bain; [1] (B) United Fire's Duty to Indemnify Bain; [2] (C) Mountain States's Claims Against United Fire for Contribution; [3] and (D) Mountain States' Claims Against United Fire for Subrogation.[4]

### A. United Fire's Duty to Defend Bain

██ Pursuant to Texas law, an insurer's duty to defend is determined by the "eight-corners" rule: "Under the eight-corners or complaint-allegation rule, an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). "The rule takes its name from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the third-party claim-

---

1. Pages 9–33

2. Pages 33–54

3. Pages 55–57

4. Pages 58–62

ant." *Id.* "Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination and allegations against the insured are liberally construed in favor of coverage." *Id.* "The duty to defend is not affected by facts ascertained before suit, developed in the course of ligation, or by the ultimate outcome of the suit." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008).

"The duty to defend is determined by examining the latest amended pleading upon which the insurer based its refusal to defend the action." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 704 (5th Cir. 1996). "The focus of the inquiry is on the alleged facts, not on the asserted legal theories." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (applying Texas law). An insured "need only demonstrate that a reasonable reading of the allegations would permit evidence of a claim that is potentially covered by the policy, and not that the claim itself is clearly demonstrated by the language of the petition." *Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 394 S.W.3d 228, 238 (Tex. App.–El Paso 2012, no pet.). "In undertaking this analysis, ordinarily '[c]ourts may not[ ] . . . (1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger

coverage.' " *Star–Tex Res., LLC. v. Granite State Ins. Co.*, 553 Fed.Appx. 366, 370 (5th Cir. 2014) (quoting *Gaur.Nat'l Ins. Co. v. Azrock Indus.*, 211 F.3d 239, 243 (5th Cir. 2000)). The Court may, however, "draw inferences from the petition that may lead to a finding of coverage." *Gen. Star Indem. Co. v. Gulf Coast Marine Assocs.*, 252 S.W.3d 450, 456 (Tex. App.–Houston [14th Dist.] 2008, pet. denied).

"Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965). Consequently, "[t]he court must resolve all doubt regarding coverage in favor of the insured. . . ." *Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 691 (5th Cir. 2010) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141–42 (Tex. 1997)). Above all, "[i]f a complaint potentially includes a covered claim, the insurer must defend the entire suit." *Zurich,* 268 S.W.3d at 491.

Thus, pursuant to the eight-corners rule, the Court will consider the relevant Policy provisions and the State–Court Plaintiffs' Second Amended Petition [5] ("Petition") to

---

**5.** Both Bain and Mountain States refer to and analyze the State–Court Plaintiffs' Second Amended Petition while United Fire references the State–Court Plaintiffs' Fifth Amended Petition. *Compare* Bain's Mot. 6 *and* Mountain States's Mot. 6 *with* United Fire's Mot. 4–5. United Fire asserts that the Fifth Amended Petition is the correct complaint that the Court should consider in determining coverage because it is "the most recent and current live pleading that is binding on the state-court case and was ultimately settled." United Fire's Resp. 5. Yet, United Fire undercuts its own argument by asserting that coverage is

precluded "regardless of what petition the Court considers." *Id.* at 8 n.3.

The Court finds that the State–Court Plaintiffs' Second Amended Petition is the one that determines United Fire's duty to defend. United Fire denied coverage based on the State Court Plaintiffs' First Amended Petition and Second Amended Petition, the latter being the most recent petition. Bain's Mot. Ex. F; Mountain States's Mot. Ex. H; *see Canutillo Indep. Sch. Dist.*, 99 F.3d at 704. While Bain asserts that it "tendered the Town's Fifth Amended Petition to United Fire for defense and indemnification," it fails to provide any

determine whether United Fire had a duty to defend Bain in the underlying state-court action.

### 1. United Fire Policy

The Policy was in effect from December 8, 2012, to December 8, 2013, and contained the following relevant provisions:

SECTION I—COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit " seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result But:

 b. This insurance applies to "bodily injury" and "property damage" only if:

 (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

 (2) The "bodily injury" or "property damage" occurs during the policy period; and

 (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II—Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

 d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II—Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

 (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

 (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

 (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

13. "Occurrence" means an accident, including continuous or repeated exposure to substan-

evidence to corroborate this statement. Bain's Resp. 2.

**tially the same general harmful conditions.**

17. **"Property damage" means:**

a. **Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or**

b. **Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.**

Policy 1–2, 15–16.

### 2. The State–Court Plaintiffs' Petition

The State–Court Plaintiffs' Petition contains the following relevant factual allegations:

- "Sometime in early 2011, toward the end of the initial phase of... aggressive dewatering, people began to notice damage to the property of the [State–Court Plaintiffs] .... Once they noticed cracking and settling damage in a few homes and the Methodist Church, a few of the [State–Court Plaintiffs] ... complained to LVWD. Pet. 7–8.

- "Bain was made aware in 2011 of the complaints of structural damages due to the dewatering and construction ...." *Id.* at 9.

- "By July 2012, residents of Clint made complaints about the settlement and ponding in the streets of Clint in which Bain ... installed sewer lines." *Id.* at 11.

- "In September, 2013 ... a heavy rainstorm struck Clint and other parts of El Paso County. The downpour caused water to pond not only in streets, but also in adjoining land. Almost immediately, residents on

some streets in Clint observed a number of the sewer connection line trenches collapsing in yards, and water 'rushing' along the sewer connection line and downward at an angle under the street following the sewer connection riser pipes. Within a day, there were a number of portions of Main, Lawson, McKinney, and to a lesser extent, Brown Streets, in which the repaved sewer trenches were observed caving in." *Id.* at 12.

- "Clint complains not about the quality of Bain's pavement work, or random potholes that result over time from freezing and thawing[,] but about lengthy collapsing of streets where Bain excavated and then installed sewer lines. The cracking and collapse of pavement is merely the visually observable symptom of an underlying problem in the sewer line Bain constructed, due most likely to poor compaction or other construction defects." *Id.* at 12–13.

- "It also appears that the adjoining sections of streets are harmed by the collapsing portions .... Additionally, many of the observed points of collapse were at or near the intersection of yard sewer collection lines ... and Bain's poor work apparently harmed such adjoining private property and sewer yard lines." *Id.* at 13.

- "The observed collapsing of the streets is an ongoing process, and is not confined to a single street. Some areas that Bain patched are sinking, and often adjoin unpatched pavement that has been sinking since the adjoining patches were made." *Id.*

- "As of December 2, 2013, there were approximately 145 feet of Main Street with 8-foot-wide asphalt patches, with another approximately 173 feet sinking as a result of subsi-

dence/poor compaction in the trench dug by Bain. Another 20 feet was patched on McKinney, the intersection of McKinney and Bonito are sinking around the manhole, and another 69 feet of McKinney are collapsing. There are about 22 feet of patches on Lawson near Brown separated by another almost 10 feet of collapsing street."

- "It is apparent that the ongoing collapsing streets in Clint are caused by the poor construction by Bain . . . ." *Id.* at 13–14.

### 3. Analysis

Pursuant to the eight-corners rule, Bain must demonstrate that the facts alleged in the Petition, if taken as true, would potentially state a cause of action falling within the terms of the Policy. For the reasons set forth below, the Court finds that the factual allegations in the Petition are not sufficiently clear "to bring the case within or without the coverage." *See Heyden Newport Chem. Corp.*, 387 S.W.2d at 26 (internal quotation marks and citation omitted). Therefore, the Court further finds that United Fire had a duty to defend Bain in the underlying action. *See id.*

The Policy establishes that it applies to (1) property damage (2) caused by an "occurrence" (3) that takes place in the "coverage territory;" (4) and occurs during the policy period if (5) Bain did not know of that property damage prior to the policy period. Policy 1–2, 12–15. If Bain did know of that property damage prior to the Policy period, then Bain will be deemed to have known of any "continuation, change or resumption of such . . . 'property damage,'" thereby precluding coverage. *Id.* at 1.

None of the parties dispute that the damages alleged in the Petition are "property damage" within the meaning of the Policy. *See generally* Bain's Mot.; United Fire's Mot.; Mountain States's Mot. Additionally, the parties agree that the property damage took place in the "coverage territory." *See id.* Indeed, the September 2013 Rainstorm and subsequent damages occurred during the policy period. The parties do dispute, however, whether the property damage alleged in the Petition was caused by an occurrence during the Policy period and whether Bain knew of the property damage alleged in the Petition prior to the Policy period.

Hence, the Court must determine (a) whether the 2013 Rainstorm was an occurrence that caused any of the property damage alleged in the Petition and (b) whether Bain was previously aware of these damages.

#### a. An Occurrence that Caused the Property Damage

First, the Court must address whether the 2013 Rainstorm constitutes an "occurrence" as defined in the Policy. The Court concludes that it does. The Policy broadly defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Policy 15. In construing identical language in a similar commercial general liability policy, the Texas Supreme Court noted that "[a]n accident is generally understood to be a fortuitous, unexpected, and unintended event." *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 24 (Tex. 2008) (internal quotation marks and citation omitted). Because the 2013 Rainstorm was a fortuitous and unexpected event, the Court finds that it constitutes an occurrence. *See Gen. Cas. Co. of Wis. v. Five Star Bldg. Corp. and Univ. of Mass., Amherst,* 2013 WL 5297095, at *5 (D. Mass. Sept. 19, 2013) (similarly holding that a rainstorm constituted an occurrence where the relevant

insurance policy contained an identical definition of "occurrence").

Next, the Court must determine whether the 2013 Rainstorm caused any of the property damage alleged in the Petition.

United Fire asserts that "[t]here are no allegations in the Petition or any supporting testimony that the 2013 [R]ainstorm caused these damages as these damages would not have occurred but for Bain's faulty and defective construction." United Fire's Resp. 5. United Fire also contends that "for the alleged damages to be considered a new and independent 'occurrence' to trigger coverage under the United Fire Policy, the 'occurrence' must be an 'act or omission of a separate and independent agent, not reasonably foreseeable, that destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question." *Id.* at 8 (citing *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009)).

The Court finds United Fire's argument regarding causation unavailing and concludes that the Petition alleges that the 2013 Rainstorm might have caused at least some of the damages.

As Mountain States correctly discerns, the Texas Supreme Court case that United Fire quotes and cites to support its position is inapposite to the present situation. *See* Mountain States's Resp. 7. *Columbia Rio Grande Healthcare* was a medical malpractice suit. 284 S.W.3d at 851. The quote that United Fire provides in its Response is taken out of context to support the proposition regarding an occurrence: that quote concerns the meaning of "new and independent cause" which is "a component of proximate cause issue" in determining negligence. *Id.* at 856. "The theory of new and independent cause is not an affirmative defense but is an element to be considered in determining the existence or non-existence of proximate cause." *Id.* Thus, the quote that United Fire provides to support its assertion that an " 'occurrence' must be an 'act or omission of a separate and independent agent, not reasonably foreseeable, that destroys the causal connection ....' " is simply not pertinent in this insurance-contract context. *See* United Fire's Resp. 7 (quoting *Columbia Rio Grande Healthcare*, 284 S.W.3d at 856). The language of the policy regarding the terms "occurrence" and "caused" controls. *See Mid–Continent Gas. Co.*, 557 F.3d at 212.

The Court then turns to the Policy language to determine whether the 2013 Rainstorm "caused" any of the damages alleged in the Petition. Because the word "caused" is not defined in the Policy, the Court gives it its "generally accepted or commonly understood meaning." *Lamar Homes, Inc., v. Mid–Continent Gas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007). Black's Law Dictionary defines "cause" as "[s]omething that produces an effect or result." *Cause, Black's Law Dictionary* (10th ed. 2014).

United Fire's argument that there is no evidence that the 2013 Rainstorm caused the damages alleged in the Petition fails for two reasons: (1) there can be more than one cause for the damages alleged in the Petition; and (2) evidence is not necessary in determining United Fire's duty to defend.

First United Fire's argument presupposes that there can only be one cause for the damages alleged in the Petition. In fact, there can be multiple or concurrent causes that bring about a certain result. Black's Law Dictionary defines "concurrent cause" as "[o]ne of two or more causes that simultaneously produce a result" and defines "contributing cause" as a "factor that—though not the primary cause—plays a part in producing a result."

*Concurrent Cause*, Black's Law Dictionary (10th ed. 2014).

Consequently, while Bain's alleged faulty workmanship might have been a contributing or concurrent cause of the damages alleged to have occurred post-2013 Rainstorm, the 2013 Rainstorm could also have been a contributing cause of these damages. For example, the Petition alleges that after the 2013 Rainstorm, "[a]lmost immediately, residents on some streets in Clint observed a number of the sewer connection line trenches collapsing in yards, and water 'rushing' along the sewer connection line and downward at an angle under the street, following, the sewer connection riser pipes." Pet. 12.

**▌** Second, United Fire's contention that there is no evidence that the 2013 Rainstorm caused any portion of the damages alleged in the Petition is inapposite in determining its duty to defend. Pursuant to the eight-corners rule, "an insurer's duty to defend is determined by the third-part plaintiff's pleadings ... without regard to the truth or falsity of those allegations." *GuideOne Elite Ins.Co.*, 197 S.W.3d at 308. Thus, it is of no consequence whether the 2013 Rainstorm actually caused the damages alleged in the Petition and no proof is required to demonstrate that it did. *See id.* Rather, if the Petition *alleges* that the 2013 Rainstorm caused some of the damages alleged in the Petition, this is sufficient under the eight-corners rule to trigger the insurer's duty to defend. *See id.*

Here, the Petition alleges that some of the property damage occurred immediately after the 2013 Rainstorm. Consequently, the Court draws the inference that the 2013 Rainstorm was possibly a contributing cause to these damages. *See Gen. Star Indent. Co.*, 252 S.W.3d at 456 (noting that the Court may "draw inferences from the petition that may lead to a finding of coverage").

Alternatively, United Fire argues that even if the 2013 Rainstorm caused some of the damages alleged in the Petition, there is no coverage for such damages because, in that instance, Bain's construction performance would not have been the cause of the damages. United Fire's Resp. 5. There is no basis in law or fact to support United Fire's argument. United Fire does not point to any provision in the Policy that requires, as a prerequisite to coverage, that the sole cause of the property damage be Bain's construction performance. However, United Fire provides no case law demonstrating that such a requirement be read into commercial general liability insurance policies such as the one at issue here. Finally, United Fire points to no language in the Policy excluding coverage for damages related to rainstorms.

### b. Bain's Knowledge of the Property Damage

The next issue is whether the Petition alleges that Bain knew of the property damage prior to the Policy period. If Bain knew of these damages, then it is deemed to have known of any "continuation, change or resumption of such ... property damage," thereby precluding coverage. Policy 1.

Bain and Mountain States argue that the Petition alleges "new additional damages, which resulted from [this] separate occurrence—the [2013 Rain]storm." Bain's Mot. 10; Mountain States's Mot. 11. Specifically, Bain and Mountain States assert that the damages alleged to have occurred pre-2013 Rainstorm concerned structural damages to the State–Court Plaintiffs' property, including "cracking and settling damages in a few homes and the Methodist Church" and the "settlement and ponding in the streets of Clint." *See* Bain's Mot. 10 (quoting Pet. 14–16); Mountain States's

Mot. 11 (same). Consequently, Bain and Mountain States argue that Bain "did not have—nor could it have had—knowledge of the property damages that occurred after and as a result of the September 2013 [Rain]storm." Bain's Mot. 13; Mountain States's Mot. 14.

In contrast, Bain and Mountain States argue, the property damage alleged to have occurred post-2013 Rainstorm were new, additional damages including the ponding in both streets and in adjoining land, immediate collapsing of sewer connection line trenches in yards, and water "rushing" along the sewer connection line. Mountain States's Mot. 12–14; Bain's Mot. 11–14. Additionally, as Mountain States and Bain highlight, the Petition alleges that within a day of the 2013 Storm, there were portions of several streets in which repaved sewer trenches were observed "caving in." Pet. 12.

United Fire argues that the damages alleged in the Petition "began in 2011 and worsened thereafter up to and beyond the [2013] [R]ainstorm." United Fire's Mot. 9–10. Specifically, United Fire contends that "[t]he Town of Clint noticed immediate collapsing of sewer lines and roads, in the exact same places and based on the exact same allegation that the Town of Clint was already suing Bain ... over defective construction." *Id.* at 10. Consequently, United Fire asserts that the "referenced rainstorm damages are nothing more than a continuation of previous known or caused damages." *Id.*

 The Court finds that while the Petition alleges that Bain was aware of some of the damages prior to the Policy, the Petition also leaves open the possibility that Bain was not aware of all damages alleged. Hence, the Court concludes that it is not clear whether all of the post-2013 Rainstorm damages alleged in the Petition were a "continuation" or "resumption" of

which Bain was already aware prior to the Policy. Thus, because there was, "potentially, a case under the complaint within the coverage of the [P]olicy," United Fire was obligated to defend Bain. *See Heyden Newport Chem. Corp.*, 387 S.W.2d at 26.

 At the outset, the Court recognizes that "property damage does not necessarily 'occur' at the first link in the causal chain of events giving rise to that property damage." *VRV Dev. L.P. v. Mid-Continent Cas Co.*, 630 F.3d 451, 458 (5th Cir. 2011).

> Nearly all property damage will be traceable back to earlier events, but this is not the nature of our inquiry. As the Texas Supreme Court has instructed, we must focus on the time of the 'actual physical damage' to the property, and not the time of the 'negligent conduct' or the process ... that later results in damage.

*Id.*

In *VRV Development*, the Fifth Circuit analyzed identical language in a similar general commercial liability insurance policy and found that damage to third-party complainants' yards because of collapsing walls were not a continuation of cracks in the wall. *Id.* at 457–58.

VRV, a building developer, entered into a contract to develop residential lots in Dallas County. *Id.* at 453–54. During the development process, VRV obtained a commercial general liability insurance policy from Mid-Continent that was effective from May 2004 until May of 2006. *Id.* at 454. During a homeowner's inspection a crack in the retaining wall was identified. *Id.* Then "[i]n January and March 2007, after periods of heavy rainfall, the retaining walls collapsed, damaging the four homeowners' backyards." *Id.* The homeowners subsequently sued VRV for negligence and breach of implied warranties.

*Id.* Mid–Continent refused to defend and indemnify VRV, arguing that no property damage was alleged to have occurred during the policy period. *Id.*

The policy at issue in *VRV Development* contained an identical definition of "occurrence" as the definition provided in the present case. *Id.* at 455. Additionally, the VRV policy provided that property damage that occurred during the policy period included any "continuation, change or resumption of that... 'property damage' after the end of the policy period." *Id.*

VRV argued that the damage to the homeowners' yards resulting from the collapsed retaining walls was a continuation of the underlying property damage to the retaining wall that occurred in 2006—manifested by a crack in the retaining wall. *Id.* at 458. As a result, VRV contended that the district court should "deem the damage to the homeowners' backyards ... to have occurred at the same time as the underlying damage to the retaining walls." *Id.* The Fifth Circuit rejected the argument and held the following:

> Here, the homeowners' backyards ... were actually, physically damaged not by the negligent design and construction to the retaining walls, nor by a continuous exposure to the walls between May 2004 and May 2006, but rather by the 'collapse' and 'failure' of the walls in January and March 2007.

*Id.* Thus, the Fifth Circuit ultimately held that Mid–Continent did not have a duty to defend VRV because the property damage occurred after the policy period. *Id.*

The Ninth Circuit Court of Appeals recently decided a similar case that is also instructive on this issue: *Kaady v. Mid–Continent Casualty Company*, 790 F.3d 995 (9th Cir. 2015). In *Kaady*, the plaintiff, Randy Kaady, was a subcontractor hired to install manufactured stone at a multi-unit residential project. *Id.* at 996. Con-

struction was completed in May 2006. *Id.* In September 2006, Kaady was made aware of cracks in the manufactured stone and masonry caps that he installed. *Id.* Then, in December 2006, Kaady purchased a one-year commercial general liability insurance policy from Mid–Continent. *Id.* The residents of the homeowners association subsequently sued the developer of the project, who sued the general contractor, who in turn sued the subcontractors—including Kaady. *Id.* The homeowners' suit alleged that portions of the structures were damaged—including deterioration of the deck posts and wall sheathing behind the manufactured stone—as a result of defective workmanship. *Id.* Kaady settled the homeowners' claims and demanded indemnification from Mid–Continent, but Mid–Continent refused to indemnify Kaady. *Id.*

Kaady's commercial general liability insurance policy also contained a "known-loss provision"—similar to the instant one—which provided that the policy applied to "property damage only if ... no insured ... knew that the ... 'property damage' had occurred, in whole or in part." *Id.* at 997. This provision also stated that if the "insured knew prior to the policy period, that the ... 'property damage' occurred, then any continuation, change or resumption of such ... 'property damage' during or after the policy period will be deemed to have been known prior to the policy period." *Id.* at 999.

Thus, Mid–Continent argued that Kaady's "claim [was] barred because he bought the policy after he already knew of the loss." *Id.* at 997. One "difficulty" that the Ninth Circuit observed regarding Mid–Continent's argument was that the "claimed damage (deterioration of the deck posts and wall sheathing) [was] a different *type* of damage than the known damage (cracks in the masonry)." *Id.* at 998 (em-

phasis added). Consequently, the Ninth Circuit construed Mid–Continent's argument to imply that an "insured's prior knowledge of *any* damage to property coverage for any other damage to that property, regardless of its type." *Id.* (emphasis added). The Ninth Circuit rejected this argument:

> But the known-loss provision bars coverage of the 'property damage' if the insured knew that the ... 'property damage' had occurred, in whole or in part.' Use of the definite article 'particularizes the subject which it precedes' and indicates that the claimed damage must be the same as the known damage. Such an interpretation makes sense considering that a commercial general liability insurance policy covers ... many different types of hazards that have no relationship to one another. *Thus, an insured's knowledge of one type of damage to property doesn't automatically constitute knowledge of any and all damage to the property*; the claimed damage must be related to the known damage.

*Id.* at 998–99 (internal quotation marks and citations omitted) (emphasis added).

The Ninth Circuit, therefore, reasoned that Kaady's knowledge of the cracks in the masonry did not constitute knowledge of the claimed property damage to the structural components. *Id.* at 999. Specifically, the Ninth Circuit found that not only were the damages to the wooden deck posts and wall sheathing damages to different property than to the manufactured stone and masonry caps, but the claimed damage was also of a different type. *Id.*

Similarly here, it is possible that the post-2013 Rainstorm damages, including collapsing streets, sewer line trenches, and the ensuing damage to the State–Court Plaintiffs' yards and adjoining land, were not necessarily a continuation of the damages that had already occurred before the 2013 Rainstorm. It is unclear from the Petition whether all of the streets affected had previously been damaged and subsequently worsened after the 2013 Rainstorm, or whether different areas and different streets commenced to sink and collapse after the 2013 Rainstorm. Furthermore, as in *VRV Development*, even if there were some damages to the same streets that eventually collapsed prior to the 2013 Rainstorm, the actual collapsing and sinking of the streets or sewer line trenches and the damage that this caused to the State–Court Plaintiffs' yards allegedly occurred after the 2013 Rainstorm. *See* 630 F.3d at 458.

Moreover, Bain's knowledge of damage to some of the State–Court Plaintiffs' property does not necessarily constitute knowledge of the damage that resulted after the 2013 Rainstorm. *See Kaady*, 790 F.3d at 998–99. Prior to the 2013 Rainstorm, the Petition alleges that there was "cracking and settling damage in a few homes and the Methodist Church." Pet. 8. The Petition further alleges, however, that immediately after the 2013 Rainstorm, sewer connection line trenches collapsed in yards. *Id.* at 12. Absent from the Petition are allegations by the State–Court Plaintiffs that Bain was aware of these collapsing sewer connection line trenches and ensuing damage to adjoining land prior to the 2013 Rainstorm or the Policy. Indeed, the alleged damages to these residents' yards are separate and distinct from the damages previously alleged.

#### c. *Fortuity Doctrine*

 United Fire also argues that any duty to defend is obviated by the fortuity doctrine. The fortuity doctrine provides that because "fortuity is an inherent requirement of all risk insurance policies," "insurance coverage is precluded where the insured is, or should be aware of an ongoing progressive loss or known loss

at the time the policy is purchased." *Two Pesos, Inc., v. Gulf Ins. Co.*, 901 S.W.2d 495, 501 (Tex. App.–Houston [14th Dist.] 1995, no writ). "A 'known loss' is a loss the insured knew had occurred prior to making the insurance contract. A 'loss in progress' occurs when the insured is, or should be, aware of an ongoing progressive loss at the time the policy is purchased." *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 75 (Tex. App.–Dallas 2001, pet. denied). Application of the fortuity doctrine in the duty-to-defend context is resolved by the eight-corners rule; 'we focus only on those facts that are alleged in the pleadings in the underlying lawsuit.'" *Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 766 (Tex. App.–Fort Worth 2006, pet denied).

As United Fire notes, the language in the Policy "tracks the concept of the fortuity doctrine," stating that the Policy "applies to damage only if the damage occurs during the policy period, and prior to the policy period, [the insured] did not know that the damage has occurred in whole or in part." United Fire Mot. 13 (quoting Policy); *see also* Steven Plitt & Jordan Ross Plitt, 2 *Practical Tools for Handling Insurance Cases* § 13:31. The Court has already determined in Section III.A.b *supra* that it is unclear from the Petition whether Bain had knowledge of the damages claimed in the Petition. Hence, for the reasons set forth in Section III.A.1.b. *supra*, the Court also concludes that it is unclear from the Petition whether the fortuity doctrine precluded coverage of all claims.

In conclusion, because there was at least one *potential* claim from coverage apparent from the Petition, the Court finds that United Fire had a duty to defend Bain in the underlying action. *See Heyden Newport*, 387 S.W.2d at 26 ("Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor.").

**B. United Fire's Duty to Indemnify Bain**

■■■■ "An insurer's duty to defend and duty to indemnify are distinct and separate duties." *Farmers Tex. Cty. Mut. Ins.Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). "[A]n insurer may have a duty to defend but, eventually, no duty to indemnify." *Id.*; *see also W. All. Ins. Co. v. N. Ins. Co. of N.Y.*, 176 F.3d 825, 830 (5th Cir. 1999) ("Assuming [insured] breached its duty to defend, it may still challenge indemnification .... It remains free ... to argue that the assumed liability was not in actuality covered under its policy ...."). Thus, "one duty may exist without the other." *D.R. Horton–Tex., Ltd. v. Markel Intern. Ins.Co., Ltd.*, 300 S.W.3d 740, 743 (Tex. 2009) (internal citation omitted). "To that extent, the duties enjoy a degree of independence from each other." *Id.* at 743–44.

■■■■ "While analysis of the duty to defend has been strictly circumscribed by the eight-corners doctrine, it is well settled that the facts actually established in the underlying suit control the duty to indemnify." *Id.* at 744. "As with any other contract, breach of compliance with the terms of an insurance policy is determined not by the pleadings, but by proof." *Id.* "No duty to indemnify arises unless the underlying litigation establishes liability for damages covered by the insuring agreement of the policy." *W. All. Ins. Co.*, 176 F.3d at 830.

■■■■ In sum:

The insurer's duty to indemnify depends on the facts proven and whether the

damages caused by the actions or omissions proven are covered by the terms of the policy. Evidence is usually necessary in the coverage litigation to establish or refute an insurer's duty to indemnify. This is especially true when the underlying liability dispute is resolved before a trial on the merits and there was no opportunity to develop the evidence, as in this case.

*D.R. Horton–Tex., Ltd.*, 300 S.W.3d at 744.

Thus, the Court will look to the evidence established in the underlying state-law action to determine whether United Fire had a duty to indemnify Bain.

For the reasons set forth below, the Court finds that there is a genuine issue of material fact regarding whether United Fire was required to indemnify Bain in the underlying action.

### 1. Bain and Mountain States's Summary Judgment Evidence

Bain and Mountain States provide the following evidence to support their contention that the post-2013 Rainstorm damages were new and independent from the pre-2013 Rainstorm damages:

- Ninyo & Moore's[6] "Geotechnical Evaluation of Construction–Related Property Damages Town of Clint Wastewater Collection System Improvements Clint, Texas" dated February 14, 2012. Bain's Mot. Ex. D; Mountain States's Mot. Ex. C [hereinafter "Geotechnical Evaluation"];

- A letter from Crocker Ltd. Architectural Conservation[7] dated August 19, 2013. Mountain States's Mot. Ex. D [hereinafter "Crocker Report"];

- An email dated September 14, 2013, containing attached photographs. Mountain States's Mot. Ex. F [hereinafter "Email"];

- Scott Bain's Affidavit. Bain's Mot. Ex. B; Mountain States's Mot. Ex. G [hereinafter "Bain Affidavit"];

- Portions of Scott Bain's deposition transcript. Bain's Resp. to Mot. to Strike Ex. A [hereinafter "Bain Deposition"]; and

- Several weather reports and bulletins. Mountain States's Resp. Ex. A.

#### a. Pre-2013 Rainstorm Evidence

Bain and Mountain States argue that the "property damage alleged to have occurred prior to the 2013 Rainstorm consisted of structural damages to residences," and cite to the Geotechnical Evaluation to support this contention. *See* Mountain States's Mot. 5; Bain's Mot. 5.

The Town of Clint requested the Geotechnical Evaluation "in response to numerous complaints from owners who reported damages to their properties thought to be related to the wastewater System construction." Geotechnical Evaluation 1. The Geotechnical Evaluation states the following:

> Soon after construction [by Bain] began [in late 2010], numerous residents and property owners located along the System alignment reported that cracks were observed on the interior and exterior finishes of their homes. These in-

6. Ninyo & Moore "is a professional geotechnical and environmental sciences consulting firm providing services in geotechnical engineering, engineering geology, geophysics, hydrogeology, soil and minerals testing, special inspection" etc. Ninyo & Moore, http://www.ninyoandmoore.com/ (last visited June 13, 2016).

7. Crocker Ltd. Architectural Conservation "is an architectural conservation and historic preservation firm specializing in the restoration of earthen buildings and the structural stabilization of all building types." Crocker Ltd, http://www.crockerltd.net/projects.htm (last visited June 13, 2016).

clude roughly 25 personal accounts of conditions attributed to the construction. These were geographically dispersed throughout the project area. As construction continued, the cracks are reported to have worsened and new cracks have formed.

*Id.* at 3.

Upon completing site visits, Ninyo & Moore "documented numerous interior drywall and ceiling cracks, wall/ceiling separations, tile cracks, and racking of interior doorframes." *Id.* at 5. Specifically, Ninyo & Moore inspected buildings and residences located on the following streets: McKinney Street, Hansard Drive, and Brown Street and found that "[e]ach of the homes inspected exhibited] recent cracking and/or floor level conditions indicative of post-construction soil movement." *Id.* at 6. "The damage include[d] progressively widening and elongating of cracks that [were] reported by the owners or occupants to be recent." *Id.* And, "in these structures, there [was] little evidence of prior cracking and repairs." *Id.* Finally, "[i]n some locations ... there [was] also abundant evidence of recent cracking of the exterior brick veneer." *Id.*

Also, regarding the Methodist Church located on McKinney Street, the Crocker Report indicates that "there ha[d] clearly been subsidence of the building evidenced by substantial cracks that ha[d] developed over the last two years ...." Crocker Report 1. The Crocker Report specifies that "[t]he distress has occurred in all walls of the sanctuary .... There [was] also evidence of recent movement in [one of the Methodist Church's halls]." *Id.*

### b. *Post–2013 Rainstorm, Causation, and Knowledge Evidence*

In contrast, Bain and Mountain States assert, the "new damages" "all involved the streets and infrastructure underlying the streets of the Town." Mountain States's Mot. 7: *see also* Bain's Mot. 6.

Mountain States provides an Email from Mark Walker, an attorney with the law firm Cox Smith, which is dated September 14, 2013 (one day after the 2013 Rainstorm occurred). Email 1. The Email states that there are "a number of places where the streets in Clint are collapsing where sewer lines were constructed, as well as a number of lines to houses form the main sewer lines." *Id.* The Email further provides that "[t]he collapsing of lines and streets ... developed] in greater scope" the day prior to the date of the email, i.e. the date of the 2013 Rainstorm, and on the date of the email. *Id.* The Email also asserts that "[t]he observed damage is significant and apparently expanding ...." *Id.* Finally, several color photographs depicting streets and other land with sinkholes and depressions are attached to the Email. *Id.* Neither Bain nor Mountain States address in their Motions, however, which streets are depicted in the photographs, and neither the photographs themselves nor the Email provide this information.

Additionally, Mr. Bain testified during his deposition that he believed the heavy rainfall during the 2013 Rainstorm constituted "extenuating circumstances" that contributed to the collapsing of the sewer trenches that Bain constructed. Bain Dep. 199. Mr. Bain further testified that he believed such damages could occur even if the trenches were compacted properly. *Id.*

Bain and Mountain States maintain that the "new damages" include "(1) ponding in the streets and adjoining land; (2) collapsing sewer connection line trenches; and (3) collapsing or sinking of portions of the streets." Mountain States's Mot. 7; *see also* Bain's Mot. 6. Bain and Mountain States claim that "[t]hese damages were not present until the September 2013 [Rain] storm, and therefore, Bain was not

aware of any such damages prior to the September 2013. [Rain]storm." Mountain States's Mot. 7. To support their contention, Bain and Mountain States provide Mr. Bain's Affidavit, wherein Mr. Bain asserts that he "visited the job site and personally observed the *newly* damaged areas." Bain Aff. 2 (emphasis added). Mr. Bain further asserts that "[t]he damages that [he] observed and that were alleged by the Town of Clint (ponding, sewer line trenches collapsing and sinking or collapsing portions of streets) arose only after the September 13, 2013, storm." *Id.* at 2–3.

United Fire objects to these statements in the Bain Affidavit, however, and requests that the Court strike and not consider them on the grounds that they are "conclusory" and "speculative." Mot. to Strike 3. United Fire asserts that no evidence besides this "self-serving affidavit" by an "interested witness" supports these "new statements that damages after the September 2013 [R]ainstorm were in fact 'new damages' and not damages that worsened and occurred based on Bain's faulty construction, and realized after the Rainstorm." *Id.* Furthermore, United Fire argues that this statement contradicts the allegations set forth in the State–Court Plaintiffs' Fifth Amended Petition. *Id.*

Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The Court finds that the Bain Affidavit satisfies these requirements. Mr. Bain's statements reflect his personal observations and knowledge regarding the damages that he observed. Bain Aff. 2. Thus, they are not speculative. Furthermore, while the statements might be conclusory and self-serving, the Court is not prohibit-

ed from considering this type of evidence in adjudicating the parties' motions. *See Dall./Fort Worth Int'l Airport Bd. v. INet Airport Sys., Inc.,* 819 F.3d 245, 254 n.14 (5th Cir. 2016) ("Provided the evidence meets the usual requirements for evidence presented on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial—self-serving [testimony] is an acceptable method for a non-moving party to present evidence of disputed material facts.").

Therefore, the Court will not strike these statements from the Bain Affidavit and will consider them in adjudicating the motions for summary judgment. The credibility of Mr. Bain, the weight that the Court assigns to this evidence, and the sufficiency of this evidence, along with the other evidence that Bain and Mountain States provide, are different questions altogether from the one of admissibility; and the Court will address these issues below in determining whether Mountain States and Bain have met their summary judgment burden.

Additionally, Mountain States provides several weather reports or "bulletins" regarding rainfall in the El Paso County, Texas area and the surrounding regions, including New Mexico, in 2013. *See* Mountain States's Resp. Ex. A. Specifically, Mountain States provides this weather evidence to support its argument that the 2013 Rainstorm resulted in substantial flooding, which in turn, resulted in new damages throughout the Town of Clint and the surrounding region. Mountain States' Response 2, Ex. A. United Fire objects to these exhibits on the basis that they "are hearsay, lack foundation, lack any type of authenticity and are wholly irrelevant to the issue and purpose of the motions for summary judgment." United Fire's Reply

8. Moreover, United Fire contends that the exhibits "do not specifically relate to the Town of Clint, but rather the entire El Paso area that was affected in some way by the 2013 [R]ainstorm." *Id.*

Pursuant to Federal Rule of Civil Procedure 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Still, Federal Rule of Evidence 201(b)(2) provides that the Court make take judicial notice of adjudicative facts. "A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "Courts may, for example, take judicial notice under Rule 201(b)(2) of court records, scientific facts, weather records, or historical and geographical data." *Longoria v. Thaler*, No. C–09–75, 2010 WL 986486, at *2 (S.D. Tex. Mar. 16, 2010) (citing Alan Wright & Kenneth W. Graham, Jr., 21B Federal Practice and Procedure § 5106 (2d ed. 2009)).

Accordingly, the Court will take judicial notice of the facts contained in the weather reports. These reports demonstrate the severity of the 2013 Rainstorm and are therefore relevant. While this evidence alone is not sufficient to establish that the 2013 Rainstorm resulted in new and additional damages, this does not affect its admissibility, or the Court's ability to consider it in adjudicating the motions for summary judgment. Again, these considerations weigh upon the Court's ultimate determination regarding the sufficiency of the evidence.

### 2. United Fire's Summary Judgment Evidence

United Fire provides the following as evidence that the damages the State–Court Plaintiffs alleged were a continuation or resumption of the damages of which Bain was already aware in connection with its allegedly faulty construction:

- "Mountain States Insurance Group Loss Run Report," containing a summary of Claim Number 201200286197. United Fire's Mot. Ex. D [hereinafter "Loss Run Report"];

- Portions of Robert Ortega's deposition transcript—an engineer who was Clint's expert witness in the underlying state law action. *Id.* at Ex. G [hereinafter "Ortega Deposition"];

- Portions Dale T. Reinhardt's deposition transcript—the former Mayor of the Town of Clint. United Fire's Resp. Ex. H [hereinafter "Reinhardt Deposition"];

- Portions of Ulises Estrada's deposition transcript; the representative of CEA—one of the named defendants in the underlying state law action that designed the dewatering project. *Id.* at Ex. I [hereinafter "Estrada Deposition"];

- Portions of Brian Zierleyn's deposition transcript—Bain's superintendent and project manager. *Id.* at Ex. J [hereinafter "Zierleyn Deposition"].

First, United Fire asserts that "the Petition alleges that the damage claims were reported to Mountain States prior to the lawsuit being filed and prior to the United Fire initial policy period." United Fire's Mot. 13. United Fire further argues that, "[n]ot only does the Petition support that Bain knew of the claims, but Bain actually disclosed the claims when it submitted the application for coverage for consideration to United Fire." *Id.* Namely, United Fire cites to the Loss Run Report wherein the Town of Clint submitted a property dam-

age claim for structural damages with a February 14, 2012 loss date. *See id.* (citing Loss Run Report).

Second, United Fire also provides the Ortega Deposition to support its position that the post-2013 Rainstorm damage was a continuation, change, or resumption of the damage that occurred before the Policy period. *See generally* Ortega Dep. Mr. Ortega testified that most of the damage to the streets seemed to appear after the 2013 Rainstorm. *Id.* at 70. Mr. Ortega further testified, however, that he did not believe that "the flooding event played any role in causing the damage to the streets" "because properly compacted backfill would not be subject to that kind of an event." *Id.* at 71. Mr. Ortega elaborated that he was basing his opinion on "[a comparison to] streets that [were] paved before other utilities that... were not adversely impacted by the weather" and based on "other projects that [he] worked on where [the streets] underwent the same storm and still are sound." *Id.* Furthermore, Mr. Ortega testified that another portion of Bain's project did not suffer any damage as a result of the 2013 Rainstorm. *Id.*

Third, United Fire highlights the fact that a "previous rainstorm in July 2012 also contributed to similar pooling and related structural damages throughout [the Town of] Clint, in the areas where the construction was ongoing, just to a lesser degree." United Fire's Resp. 2. Although Mayor Reinhardt testified that he noticed "ponding" "depressions" "sinking" and "sink holes" in some of the streets after rainfall in July 2012, it is not clear from the transcript which streets exactly were affected.[8] Reinhardt Dep. 64–65. As far as

the Court can discern from the transcript, at least the following streets were affected to some extent: Main Street, Brown Street, and McKinney Street. Mayor Reinhardt also indicated that all of the aforementioned damages to the streets occurred in areas where Bain had previously engaged in trenching and excavation. *Id.* at 65.

Finally, United Fire provides portions of the transcript of Brian Zierleyn's deposition to support its contention that Bain had knowledge of the ponding in the trenched areas in the summer of 2012— Mr. Zierleyn was Bain's superintendent and project manager. Specifically, Mr. Zierleyn testified that he was made aware that there might be ponding developing on Lawson Street. Zierleyn Dep. 134. Additionally, Mr. Zierleyn testified that he was aware of complaints made about the plumbing subcontractors because there were "rains and ... irrigation instances early on where [there was] some settling on the property that [Bain] fixed." *Id.* at 135. Mr. Zierleyn also attended a meeting where he was made aware of complaints that plumbers were not using the proper compaction equipment." *Id.* at 136.

United Fire also utilizes Mr. Zierleyn's testimony to bolster its argument that Bain's improper construction was the true cause of the damages alleged in the Petition: Mr. Zierleyn testified that he would not expect for soil put into a trench to collapse upon application of water if the surrounding native soils do not collapse. Consequently, Mr. Zierleyn agreed that if the soil in the trench did collapse, this would indicate that the trench was not compacted "100 percent." *Id.* at 103–04. Furthermore, Mr. Zierleyn testified that

---

**8.** United Fire does not provide the complete deposition transcript but only provides portions of it. This is problematic because the transcript references exhibits and "marks"

within those exhibits. Without the complete deposition transcript and exhibits, the Court cannot readily follow the deposition testimony in its proper context.

he was unaware of any other trenches that Bain constructed, besides those in the Town of Clint, that collapsed following the September 2013 Rainstorm. *Id.* at 163.

### 3. Analysis

 Based on the aforementioned evidence, the Court concludes that there is a genuine issue of material fact regarding whether United Fire had a duty to indemnify Bain. Specifically, it is unclear whether *all* of the post-2013 Rainstorm damages were a "continuation, change or resumption" of the pre-Policy damages, thereby completely precluding coverage. *See* 2 Practical Tools for Handling Ins. Cases § 13:31 ("Determining whether the known loss provision applies to preclude coverage typically presents a fact intensive analysis.").

This case is similar to the *Kaady* case, discussed in Section III.A.3b *supra,* where the Ninth Circuit held that summary judgment was inappropriate where it was unclear whether "the cracks in the masonry allowed water to seep in and damage the wood beneath." 790 F.3d at 1000. The Ninth Circuit noted that if this was the case

> then the claimed damage might well be considered a 'continuation, change or resumption' of the cracks. But without any record evidence connecting the cracks in the masonry that Kaady observed before he bought the policy to the damage to the wooden components for which Kaady claime[d] coverage, summary judgement was inappropriate.

*Id.*

Here, the summary judgment evidence does demonstrate that there were some damages to Main, Brown, McKinney, and Lawson Streets before the 2013 Rainstorm. Reinhardt Dep. 64–65; Zierleyn Dep. 134. These damages are described as "sinking" "depressions," "ponding' and "sink holes," thus arguably making any

subsequent damages to these particular streets in the same areas a "continuation" of those damages, thereby precluding coverage pursuant to the policy. *See id.* The summary judgment evidence also demonstrates, however, that there were some damages to unknown streets that occurred after the 2013 Rainstorm. Email; Pet. 12–13; Bain Aff. 2; Ortega Dep. 70. What is unclear from the record is the location, type, and extent of these post-2013 Rainstorm damages. Thus, the Court cannot ascertain from the record whether there were any damages that occurred subsequent to the 2013 Rainstorm that were different in type or that occurred on streets other than those that had previously been affected.

This lack of clarity stems from the parties' failure to specify the exact locations on the exact streets where damages occurred prior and subsequent to the 2013 Rainstorm. For instance, the deposition testimony transcripts that United Fire presents provide scant information regarding the type, extent, and location of damages on the streets mentioned prior to the 2013 Rainstorm. Thus, the record suggests that there could have been at least some damages to certain streets that occurred prior to the Policy period. Similarly, the Email that Mountain States presents contains photographs of damaged streets but is silent as to the names or locations of such streets. Therefore, the record also suggests that there were damages to unknown streets and collapsing sewer lines that occurred post-2013 Rainstorm and during the Policy of which Bain might have been unaware.

Additionally, while the Ortega Deposition provides Mr. Ortega's opinion that the 2013 Rainstorm did not contribute in any manner to the damages alleged to have occurred after the 2013 Rainstorm, the

Court finds that Mr. Ortega's opinion alone is insufficient to support this conclusion. *See* Ortega Dep. 71. Similarly, while the Bain Deposition provides Mr. Bain's opinion that the 2013 Rainstorm caused the damages to some of the trenches and that this damage could have occurred even if they had been properly compacted, Mr. Bain's opinion alone is also not sufficient to support this conclusion either. *See* Bain Dep. 199. The Court thus concludes that there is a genuine issue of material fact regarding whether the damages that occurred after the 2013 Rainstorm were caused solely by Bain's alleged poor construction or whether the 2013 Rainstorm was also a contributing cause.

Finally, there is a fact issue regarding Bain's knowledge of the damages to the streets that occurred after the July 2012 rain and prior to the September 2013 Rainstorm. Mr. Bain's statement that the damages he observed were new damages support Bain and Mountain States's contention that Mr. Bain was unaware of these damages. Bain Aff. 2. Mr. Zierlyen's statement that he had knowledge of some ponding in certain streets also supports the contention that Bain was partially aware of some damages to streets prior to the 2013 Rainstorm—thus creating a genuine issue of material fact. Zierlyen Dep. 134–36.

In sum, none of the parties have demonstrated that they are entitled to judgment as a matter of law regarding the issue of indemnification: it is unclear from the record whether there were any damages that occurred after the 2013 Rainstorm that were independent·from the damages that occurred prior to the Policy in connection with Bain's construction work and of which Bain was previously aware.

### 4. Segregating Damages

 United Fire also asserts that Bain and Mountain States are not entitled to recovery because they have failed to segregate damages. The Court finds that it should determine the apportionment of damages after it conducts the bench trial.

 "The damages recited in either a judgment or a settlement of the underlying lawsuit must be apportioned between claims covered by the policy and those that are not." *Willcox v. Am. Home Assur. Co.*, 900 F.Supp. 850, 856 (S.D. Tex. 1995) (citing *Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1495 (5th Cir. 1992)). "In the context of a settlement, indemnification is proper only when the claims settled are shown to be within the scope of policy coverage." *Id.* (citing *Winn v. Continental Casualty Co.*, 494 S.W.2d 601, 604 (Tex. App.–Tyler 1973, no writ). "The burden of apportioning damages between covered and noncovered · claims, however, rests on the insured." *Id.* (citing *Maurice Pincoffs Co. v. S. Stevedoring Co., Inc.*, 489 S.W.2d 277, 278 (Tex. 1972)).

> A district court may determine the proper apportionment of a settlement as a matter of law by looking to the settlement agreement and by examining the allegations in the underlying suit and the coverage of the insurance contract. If the district court cannot determine the allocation of liability as a matter of law, it must hold a trial to apportion responsibility between the covered and noncovered causes of the harm.

*Cooper Indus. LLC. v. Am. Int'l Specialty Lines Ins. Co.*, 350 Fed.Appx. 876, 878 (5th Cir. 2009).

Pursuant to the "Settlement Agreement and Mutual Release" ("Settlement Agreement") between the Town of Clint, "Bain agree[d] to pay the Town [of Clint] Two Hundred Thousand ... Dollars ($200,-000.00) to fully and completely settle *all claims and causes of action* asserted, or which could have been asserted by the

Town [of Clint] in the litigation." [9] Mountain States's Mot. 13; Mountain States's Mot. to Am. Scheduling Order and for Leave to File Cross-cl. Against United Fire & Casualty Ex. A, at 2, Oct. 28, 2015, ECF No. 33 (emphasis added).

United Fire contends that neither Bain nor Mountain States are entitled to recovery because they have failed to segregate the damages covered by the Mountain States Policy from those that are new and independent and should be covered under the United Fire Policy. United Fire's Mot. 16.

Bain and Mountain States argue that they do provide evidence segregating damages. Namely, Bain and Mountain States assert that the entire amount that they both jointly paid to settle the underlying state-law action (i.e., $200,000) "was to settle the Town[ ] [of Clint's] claims for damages it suffered as a result of the September 2013 storm." Mountain States's Resp. 13. In support of their assertion that the entire settlement amount was for damages caused by the September 2013 Rainstorm, Bain and Mountain States offer two pieces of evidence: (1) the Bain Affidavit and (2) the affidavit of David Hilliard, Director of Claims at Mountain States. *See* Bain Aff.; Mountain States's Resp. Ex. F [hereinafter "Hilliard Affidavit"].

In the Bain Affidavit, Mr. Bain avers that "Bain's settlement with the Town for $200,000 was intended primarily to settle the Town's claims resulting from the September 13, 2013 [Rainstorm]." Bain Aff. 4. United Fire objects to this statement on the basis that it violates the best evidence rule. The Court finds that this evidence is not sufficient to apportion damages, and thus finds it unnecessary to delve into the merits of whether this statement violates the best evidence rule.

Similarly, Mr. Hilliard avers that "Mountain States paid $100,000 to Bain for purposes of settling the underlying lawsuit with the Town of Clint. This settlement money from Mountain States was solely designated to satisfy the claimed damages relating to the September 2013 [Rain]storm event." Hilliard Aff. 2.

The Court determines that the settlement agreement, along with the Petition, is not helpful in apportioning damages. *See Enserch Corp,* 952 F.2d at 1495 ("We consider it unlikely that the settlement in this case (perhaps in any case) will be sufficient to justify an allocation of damages .... The final answer on this, however is for the trial court to decide."). While the Settlement Agreement provides that Bain will pay the Town of Clint $200,000 for all damages, it fails to distinguish the amount of damages that are covered pursuant to the Mountain States Policy and those covered by the United Fire Policy.

While the Bain and Hilliard Affidavits assert that the settlement Bain was *intended primarily* to settle the claims resulting from the 2013 Rainstorm, this does not prove the proportionate amount that either Mountain States or United Fire should pay pursuant to their respective policies. Even if Bain and Mountain States intended for the settlement amounts that they respectively paid to settle the claims resulting from the 2013 Rainstorm, the Petition alleged damages that occurred during both policy periods. Therefore, United Fire may be responsible for some portion of the payment, if and only if, the damages are covered by the United Fire Policy.

**9.** The Settlement Agreement does not mention the other State–Court Plaintiffs, but only the Town of Clint.

## C. Mountain States's Claims Against United Fire for Contribution

■ The elements of contribution "require that several insurers share a common obligation or burden and that the insurer seeking contribution has made a compulsory payment or other discharge of more than its fair share of the common obligation or burden." *Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 772 (Tex. 2007); *see also Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 695 (5th Cir. 2010).

### 1. Contribution for Defense Costs

■ The Court finds that Mountain States is entitled to recover half of the defense costs it spent in the underlying state-law action from United Fire.[10]

■ First, Mountain States has satisfied the "common obligation requirement" because the Court has determined that United Fire had a duty defend Bain in the underlying action. *See Trinity Universal Ins. Co.*, 592 F.3d at 695. "The duty to defend creates a debt which is equally and concurrently due by all of its insurers." *Id.* (internal quotations and citations omitted). This is true because "if even a single claim in a lawsuit potentially falls within an insurance policy's coverage, the insurer has a duty to provide a *complete* defense." *Id.* (emphasis in original).

Second, because United Fire did not participate in or contribute to Bain's defense, Mountain States "has made a compulsory payment or other discharge of more than its fair share of the common obligation or burden." *Id.*

Thus, "it follows that [Mountain States] has borne more than its fair share of a common burden" and is entitled to recover

half of the costs it spent in defending Bain in the underlying action from United Fire. *See Nat'l Cas. Co. v. W. World Ins. Co.*, 669 F.3d 608, 618 (5th Cir. 2012) (similarly holding that an insurer was entitled to half of the defense costs that it spent in the underlying litigation where co-insurer refused to defend common insured).

### 2. Contribution for Indemnification

■ "For an insurer to be entitled to equitable contribution from other insurers, the policies in question must insure the same party, the same interest, and the same risk." *Mt. Hawley Ins. Co. v. Lexington Ins. Co.*, 110 Fed.Appx. 371, 376 (5th Cir. 2004) (internal quotation marks and citations omitted); 15 Couch on Ins. § 218:3. "Accordingly, where insurers cover separate and distinct risks there can be no contribution among them." 15 Couch on Ins. § 218:3.

■ Here, Mountain States cannot meet the "common obligation" requirement for its indemnification of Bain in the underlying action because the policies insure different risks during different time periods. The consecutive insurance policies provided distinct and independent contracts between the respective insurance companies.

Consequently, even if United Fire had a duty to indemnify Bain for the damages that Bain and Mountain States allege occurred after the 2013 Rainstorm, this was not an obligation that was shared by Mountain States. If what Bain and Mountain States allege regarding the 2013 Rainstorm is true, Mountain States was not legally obligated to pay for the damages that resulted after the 2013 Rainstorm.

---

**10.** The amount that Mountain States spent in defense costs is not apparent from the record. Therefore, Mountain States must submit ap-

propriate evidence outlining the amount it paid in defending Bain in the underlying state-court action.

Thus, Mountain States does not have a direct cause of action against United Fire for these costs. *See Mid–Continent Ins. Co.*, 236 S.W.3d at 772 (noting that where an insurer pays more than its common obligation it "does so voluntarily" and "without a legal obligation to do so," thus precluding the insurer from recovering the excess from other co-insurers). However, as discussed below, Mountain States can potentially recover these costs through subrogation.

### D. Mountain States Claims Against United Fire for Subrogation

 "Insurers may have either 'contractual subrogation rights, which arise from contract language, or 'equitable' subrogation rights, which exist in equity to prevent the insured from receiving a double recovery to the insurer's detriment." *Concierge Nursing Centers, Inc. v. Antex Roofing, Inc.*, 433 S.W.3d 37, 44 (Tex. App.–Houston [1st Dist.] 2013, pet. denied). If the insurance contract between the insurer and the insured contains a subrogation clause, the language of the subrogation clause controls: Contractual subrogation clauses express the parties' intent that reimbursement should be controlled by agreed contract terms ...." *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 647–48 (Tex. 2007).

Here, the subrogation clause in Mountain States's Policy provides the following:

8. **Transfer Of Rights Of Recovery Against Others To Us**

 **If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.**

 "An insurer's right to subrogation arises when the insured has a cause of action against the defendant." *Trinity Universal Ins. Co. v. Bill Const., Inc.*, 75 S.W.3d 6, 10 (Tex. App.–San Antonio 2001, no pet.). Thus, "[w]hen the insurer seeks to recover through contractual subrogation, it 'stands in the shoes of the insured, obtaining only those rights held by the insured against a third party, subject to any defenses held by the third party against the insured.'" *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 305 (5th Cir. 2010) (quoting *Mid–Continent Ins. Co.*, 236 S.W.3d at 774).

United Fire argues that Mountain States is not entitled to subrogation because Bain has already been fully indemnified. United Fire's Mot. 18. To support this contention, United Fire quotes the following language from *Mid–Continent*: "a fully indemnified insured has no right to recover an additional pro rata portion of settlement from an insurer regardless of that insurer's contribution to the settlement. Having fully recovered its loss, an insured has no contractual rights that a co-insurer may assert against another co-insurer in subrogation." *Id.* (quoting *Mid–Continent*, 236 S.W.3d at 775–76).

United Fire's argument is problematic for two reasons: First, Bain has not been fully indemnified. Mountain States paid $100,000 of the settlement amount that Bain paid. Therefore, Bain has not fully been indemnified.

Second *Mid–Continent* is not applicable here. *Mid–Continent* was a case in which two primary co-insurers cooperatively assumed defense of the suit against their common insured, admitting coverage. 236 S.W.3d at 769–70. Once the insured entered into a settlement in the underlying action, one of the insurers refused to contribute its proportionate part in the settle-

ment because it valued the case at a lower price than the settlement suggested. *Id.* at 770. Consequently, one insurer paid less than its proportionate share of the settlement while the other paid more. *Id.* The Texas Supreme Court held that in that instance, the insurer paying more was not entitled to subrogation because the insured had been fully indemnified. *Id.* at 774.

But the Fifth Circuit has cabined *Mid–Continents* holding to its facts and has held that this case does not bar an insurer from seeking subrogation where the insured has been fully indemnified: "Accordingly, ... we hold that *Mid–Continent* does not bar contractual subrogation simply because the insured is fully indemnified." [11] *Amerisure*, 611 F.3d at 307 (internal citation omitted). Specifically, the Fifth Circuit emphasized that *Mid–Continents* holding is especially relevant, where unlike here, the insured is "fully protected because both insurers acknowledge [ ] their duties to defend and indemnify." *Id.* at 307. Thus, the Fifth Circuit has held that Mid–Continent "does not bar contractual subrogation where, as here, an insurer has denied coverage." *Md. Cas. Co. v. Acceptance Indem. Ins. Co.*, 639 F.3d 701, 706 (5th Cir. 2011) (describing its holding in *Amerisure* ).

██ Consequently, if United Fire had a duty to indemnify Bain in the underlying action, Mountain States might have a right of contractual subrogation against United Fire. Because there is a fact issue regarding whether United Fire had a duty to indemnify Bain, however, the Court cannot yet determine whether Mountain States is entitled to contractual subrogation.

Moreover, even if the Court finds that United Fire had a duty to indemnify Bain, however, it is unclear whether Mountain States is entitled to recover any portion of the $100,000 it contributed to the settlement. The summary judgment evidence demonstrates that Mountain States was required to pay some portion of the settlement, as the Petition alleges damages during the Mountain States Policy period that are covered by the Mountain States Policy. If the $100,000 reflects Mountain States's proportionate share for the damages that occurred during its policy period, then it is not entitled to contractual subrogation from United Fire. Conversely, if the $100,000 reflects more than Mountain States's proportionate share and includes payment for damages that occurred after the 2013 Rainstorm, and during the United Fire Policy, then Mountain States is entitled to recover the excess amount it paid from United Fire via contractual subrogation. These are issues that will have to be determined during trial.

## IV. CONCLUSION

The Court finds that summary judgment should be granted against United Fire in favor of Mountain States on the issue of United Fire's Duty to Defend Bain in the underlying state-court action. Accordingly, Mountain States is entitled to recover half of its defense costs from United Fire.

The Court also holds that there is a genuine issue of material fact regarding whether United Fire had a duty to indemnify Bain because there is a genuine issue of material fact regarding the following sub-issues: (1) whether all the post-2013 Rainstorm damages to the streets were a

11. "The majority of courts ... have cabined *Mid–Continent* to its facts .... We agree with the majority of courts that have examined the issue and we reject the overly broad view of Mid–Continent's subrogation exclusion. That view would effectively end contractual subrogation in Texas." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 306-07 (5th Cir. 2010).

continuation of the damages that were already present prior to the 2013 Rainstorm; and (2) whether Bain had knowledge of all the pre-2013 Rainstorm damages. Therefore, the Court denies United Fire's, Bain's, and Mountain States's motions for summary judgment regarding the issue of indemnification.

Additionally, the Court finds that Bain and Mountain States must segregate damages during trial.

Accordingly, IT IS ORDERED that United Fire's "Motion for Summary Judgment" (ECF No. 52) is **DENIED.**

IT IS FURTHER ORDERED that Mountain States's Motion for Summary Judgment" (ECF No. 53) is **GRANTED IN PART AND DENIED IN PART.**

IT IS FURTHER ORDERED that Bain's "Motion for Summary Judgment" (ECF No.51) is **GRANTED IN PART AND DENIED IN PART.**

IT IS FURTHER ORDERED that United Fire's "Motion to Strike Portions of Plaintiff's and Defendant Mountain States Insurance Group's Motion for Summary Judgment Affidavit" (ECF No. 54) is **DENIED.**

IT IS FURTHER ORDERED that Bain and Mountain States submit their stipulation of dismissal, final judgment, non-suit, agreed motion to dismiss, or other appropriate document disposing of Bain's claims against Mountain States **on or before August 12, 2016.**[12]

IT IS FINALLY ORDERED that the above-captioned cause is set for a **BENCH TRIAL** in Courtroom Number 622, on the

Sixth Floor of the United States Courthouse, 525 Magoffin Avenue, El Paso, Texas, on **October 17, 2016,** at **8:30 a.m. Mountain Standard Time.**

---

12. The parties informed the Court that while "Bain initially asserted claims against both United Fire and Mountain States," "Mountain States and Bain have settled the dispute between them." Agreed Mot. to Extend Time to File Dispositive Mots. 2, Feb. 25, 2016, ECF No. 44. Thus, the parties indicated that "Mountain States and Bain have agreed to a Motion to Dismiss Bain's claims against Mountain States, with prejudice" and that they would submit this motion to the Court. *See id.* As of the date of this order, the parties have not submitted said motion